Not for Publication in West's Federal Reporter
Citation Limited Pursuant to 1st Cir. Loc. R. 32.3

# United States Court of Appeals
## For the First Circuit

No. 02-1518

GEORGE AFFONSO, STEPHEN ARAUJO, RICHARD AMORIN, DENNIS AUDET,
PETER BALKUS, SR., ANTHONY BLACK, ALBERT DEL TORO, FRANK DRAKE,
ROBERT EMBREY, RICHARD EZOVSKI, MANUEL FERREIRA, RONALD FINNERTY,
JOHN FITZSIMMONS, JAMES GARANT, ALLAN GOLZ, CHARLES KARNS,
RONALD LASSONDE, WAYNE LORD, WILLIAM MACKENZIE, ROBERT OLIVER,
THOMAS J. PERRY, HENRY REIS, RAY RODERIQUES, GLENN ROUSSEAU,
STEVEN SNIZEK, CYNTHIA SOUZA, JOSEPH J. SOUZA, KERRI SPICER,
WILLIAM SPICER, JR., THOMAS TULLIE, GEOFFREY VANN EPPS,
AND DAVID VANNIER,

Plaintiffs, Appellants,

v.

NEW ENGLAND ELECTRIC SYSTEMS, NEW ENGLAND POWER CO., AND
NEW ENGLAND POWER SERVICE CO.,

Defendants, Appellees.

No. 02-1579

KENNETH ALTON, MICHAEL P. ANGELINI, STEVEN ATKINSON,
JOSEPH AVERY, RICHARD W. BENNETT, ROBERT BENSON, RENE BERGERSON,
DAVID BERUBE, A. ARTHUR BEVILACQUA, DAVID BLANCHETTE,
DOUGLAS BONDAR, ANTHONY BOTELHO, PAUL BOUTIETTE,
EARL BRISETTE, JR., RICHARD BUONFIGLIO, PATRICIA BURDICK,
LAURENCE BURNETT, JAMES BUSHIKA, JAMES S. CASEY,
ROLAND CHARDONNET, JAMES CLEAVES, KAREN CLEAVES,
RICHARD CONWAY, JR., CAROLE A. CORMIER, JR., KEVIN CORNACCHIO,
MITCHELL CROKER, DANIEL P. CUNNINGHAM, COLEEN DI MAMBRO,
BRUCE DICKINSON, EDGAR DODENGOFF, JR., JOHN DONAHUE,
FREDERICK DUCHARME, STEVEN DULONG, MARY ALICE FISCHER,
TERRANCE FLANAGAN, GERALD FLYNN, DANIEL GIRARD, DAVID GRENIER,
PAUL GROGAN, WILLIAM GUY, WILLIAM T. HANLEY, CHARLES HARROW,
GEORGE HASENFUSS, JR., JAMES HORNER, HERBERT HORSEMANN,
ED HUNT, JR., JOHN HUYSENTRUYT, MICHAEL JAKUBOWSKI, DAVIS JAMES,
NEIL JANSON, MICHAEL KACZMAREK, SHAWN KENISTON, CARL KREKORIAN,
DAVID KUROWSKI, JAMES LAFLAMME, WILLIAM LAINE, PAUL LEONARD,
CHARLES MATCZAK, JR., ROBERT MCCOY, THOMAS MCKENNA,

CARLOS MEDINA, EDWARD MINMAUGH, MICHAEL MORIARTY, DAVID MURRAY, DEBORAH POSTON, JEFFREY POTTS, JOHN RAINVILLE, PETER RAMUT, JR., TIMOTHY REVELLESE, GEORGE RINALDI II, ROBERT V. ROSSI, ARCHIE ROYSTER, WILLIAM ST. GERMAIN, RICHARD SCHALCK, BEVERLY SHEEHAN, KENNETH SMALL, BRUCE SMITH, DIANE SMITH, JAMES SOUSA, JR., NEIL SULLIVAN, PETER THIRAULT, JOSEPH VOLPE, WILLIAM WESTON, THEODORE WITMAN, ROBERT WRIGHT, BRIAN WRIGHT, WALLACE ZIEHLER, N. ROBERT WARD, AND DONALD R. STEWART, JR.,

Plaintiffs, Appellants,

v.

NEW ENGLAND ELECTRIC SYSTEMS COMPANIES STANDARD SEVERANCE PLAN FOR NON-UNION EMPLOYEES, THE SEVERANCE COMMITTEE OF THE NEW ENGLAND ELECTRIC SYSTEM COMPANIES STANDARD SEVERANCE PLAN FOR NON-UNION EMPLOYEES, NEW ENGLAND POWER COMPANY, NEW ENGLAND POWER SERVICE CO., NEW ENGLAND ELECTRIC SYSTEMS, NEW ENGLAND ELECTRIC SYSTEM COMPANIES SPECIAL SEVERANCE PLAN FOR NON-UNION EMPLOYEES, AND THE SEVERANCE COMMITTEE FOR THE NEW ENGLAND ELECTRIC SYSTEM COMPANIES SPECIAL SEVERANCE PLAN FOR NON-UNION EMPLOYEES,

Defendants, Appellees.

_____

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge]

_____

Before

Selya, Circuit Judge,
Coffin, Senior Circuit Judge,
and Lipez, Circuit Judge.

_____

Mitchell J. Notis with whom Michael N. Abodeely Jr., Annenberg & Levine LLC and Abodeely & Revelli were on brief for appellants in No. 02-1518.

Michael N. Abodeely Jr. with whom Mitchell J. Notis, Abodeely & Revelli, and Annenberg & Levine LLC were on brief for appellants in No. 02-1579.

Neil Jacobs with whom Laura E. Schneider, C. Tama Donovan and Hale and Door LLP were on brief for appellees.

December 31, 2002

**COFFIN**, **Senior Circuit Judge**. These consolidated appeals result from the district court's grant of summary judgment to defendants-appellees, New England Electrical System (NEES) and related organizations, affirming the decision of the NEES Benefits Appeal Committee to deny severance benefits under the Standard Severance Plan (Plan) to plaintiffs-appellants.

The district court's Memorandum of Decision of March 29, 2002, set forth the relevant facts: the terms of the Plan, the sale of power generating assets to U.S. Gen Acquisition Corporation (USGen), the termination of appellants' employment with NEES, and their immediate, uninterrupted employment with equivalent compensation and benefits by USGen. We reiterate the highly deferential standard of review applicable to this case because the Plan explicitly gives the Plan administrator discretion to interpret the Plan's terms: a decision will be overruled as "arbitrary and capricious" only if it was "unreasonable in light of the information available to it." Pari-Fasano v. ITT Hartford Life & Accident Ins. Co., 230 F.3d 415, 419 (1st Cir. 2000).

The district court also set forth the reasoning underlying its decision, that the key words, "permanently released from employment for reasons beyond [the employees'] control," were ambiguous. The court concluded that extrinsic evidence, such as the past practice of NEES to apply its Plan only to individual terminations and its devising of plans such as the Special Severance Plan to cover major corporate reorganizations, rendered the decision of the NEES Benefits Appeal Committee not

-4-

unreasonable, and therefore, not arbitrary and capricious. We affirm the court's grant of summary judgment in favor of appellees, relying substantially on the district court opinion and adding only the following to reflect more fully points advanced in briefs and arguments before us.

We begin with the keystone of our decision, our conclusion that, in the context of this case and the specific Plan involved, the words "permanently released from employment for reasons beyond their control" are ambiguous. The phrase contains varying degrees of ambiguity. The first is the language "released from employment." Appellants insist that this should be construed as "released from employment by NEES." The question is not whether this is a reasonable interpretation, but whether it is the only reasonable interpretation; otherwise, appellants fail at their threshold argument that the language is unambiguous in compelling the result they seek.

Dictionary definitions of "employment" include such phrases as "the state of being employed" and "an occupation by which a person earns a living." The Random House Dictionary of the English Language 638 (2d ed. 1987). If employees at no time were separated from the "state of being employed," it would follow that they were not "released" from that state -- by NEES or anyone else. This interpretation does not seem to us unreasonable. It also accords with a common sense judgment that if one continues without interruption to do the same work in the same place for similar pay and benefits, he has not been out of a job.

A second source of ambiguity is the word "permanently." One interpretation, favorable to appellees, is that the action of NEES in accomplishing the transfer of employees to USGen without a break in service, loss of pay, or absence from the job, did not constitute a "permanent" release from employment. Appellants counter by arguing that "permanently" has to mean "permanently released from employment with NEES," because if it meant released from something other than employment with NEES, it would mean any work anywhere, in any vocation, and there would be no way to determine when a person would ever qualify for benefits. This, say appellants, is tantamount to a requirement that a person "never again work at all." This argument not only requires us to construe "permanently" in an extreme sense, far beyond common understanding, but it falls of its own weight – for it is vulnerable to the same reasoning. That is, an appellant, now working with USGen and terminated from NEES, may in the future find reemployment with NEES and therefore would never be eligible for benefits. In any event, whatever the validity of this argument, it falls short of being the only rational interpretation of the language.

A third example of the phrase's ambiguity is the preclusion of applicability of the Plan to anyone who voluntarily accepted a job at USGen. See Allen v. Adage, Inc., 967 F.2d 695, 699 (1st Cir. 1992) (noting that a ruling may be made "against the backdrop of a particular set of plan provisions"). The Benefits Appeal Committee, as did the Severance Committee, reasoned that the claimants had the option of not accepting a job with USGen and of

participating in the process of being considered for other positions with NEES.  This is closer to the line, but we cannot say that the concept of "voluntary" is entirely free of ambiguity.

There is more.  Appellants rightly call our attention to the Preamble of the Plan, Article 1.1, in which the "purpose" of the Plan is described as "to provide severance benefits to regular full-time and part-time non-union employees who are permanently released from the Company for reasons beyond the employee's control."  On the other hand, the Summary Plan Description (SPD) begins by stating that it was "designed to help ease the financial and emotional hardship that can occur if you are involuntarily terminated for reasons beyond your control."  As the Second Circuit has stated in Moore v. Metropolitan Life Ins. Co., 856 F.2d 488 (2d Cir. 1988), "Congress intended that plan documents and the SPDs exclusively govern an employer's obligations under ERISA plans." Id. at 492.  Moreover, the inclusion in the Plan of provisions dealing with outplacement services (including job search and career counseling guidance) and healthcare strongly point to minimizing hardship as a motivating force of the Plan.

The district court did not err in ruling that the critical Plan language was ambiguous.  So ruling, the court properly considered extrinsic evidence including past practice, the notices given appellants, and the provisions of the Special Severance Plan, as well as the fact that appellants proffered no extrinsic evidence supporting their eligibility.

The outcome accords with our pronouncement in <u>Allen</u>:

> Whatever the exact ramifications of the highly nuanced phrase "reduction-in-force," [read "permanently released from employment"] that term would rarely be thought to cover, for severance pay purposes, the selling of a division to another company under circumstances in which the work force is kept solidly in place by the purchaser, doing roughly comparable work for roughly comparable wages.

<u>Allen</u>, 967 F.2d at 700. This statement is particularly pertinent when we consider the context in which this case arises -- the major reshuffling of a company involving a large mass of workers with widely differing problems of and approaches to employment readjustment.

Finally, we stress the criticality of the deferential standard of review. Only arbitrary and capricious decisions by the Plan administrator will be set aside. A plethora of cases involving severance provisions in ERISA plans can be cited. But results often turn on whether a de novo or a deferential standard applies. A dramatic example is a case heavily relied on by appellants, <u>Anstett</u> v. <u>Eagle-Picher Industries, Inc.</u>, 203 F.3d 501 (7th Cir. 2000). The court, in a de novo review, construed "terminated" in a severance plan to cover the situation where a division is sold to a buyer that immediately reemploys the workers. The court called attention to its prior contrary holding on similar facts in <u>Sly</u> v. <u>P.R. Mallory & Co.</u>, 712 F.2d 1209 (7th Cir. 1983), explaining that <u>Sly</u> involved deferential review and that the court there "was simply upholding the administrator's reading as reasonable." <u>Anstett</u>, 203 F.3d at 506. Similarly, in the more

-8-

recent case of <u>James</u> v. <u>General Motors Corp.</u>, 230 F.3d 315 (7th Cir. 2000), the court, reviewing a plan involving the word "terminated," explained that "[b]ecause the plan [in <u>Anstett</u>] did not grant discretion to the administrator, we looked at it <u>de</u> <u>novo</u> and held [the employer] to the letter of its benefit package." <u>Id.</u> at 318. Given that the arbitrary and capricious standard applies here, and considering that the extrinsic evidence weighed heavily in favor of appellees' interpretation of the Plan, the district court did not err in concluding that the Benefits Appeals Committee's denial was not arbitrary and capricious.

Appellants here faced a very high hurdle. They have argued forcefully for their interpretation. But they had the challenge of showing a lack of ambiguity in the terms such that no other interpretation fell within reasonable bounds. We hold that this challenge was not met.

**<u>Affirmed.</u>**