**James LATZKE, Plaintiff,**

v.

**CONTINENTAL CASUALTY COMPANY,[1] Defendant.**

No. 02–2116.

United States District Court,
C.D. Illinois,
Urbana Division.

March 12, 2003.

1.  The Complaint names as Defendant CNA Insurance Company, but Defendant has informed this court that its correct name is Continental Casualty Company. Accordingly, the docket sheet will be changed to reflect Defendant's true name.

S. Craig Smith, Asher, Smith & ISAF, Paris, IL, for Plaintiff.

Philip F. Brown, Michael E. Hefferman, Brenner, Brown, Golian & McCaffrey, Columbus, OH, for Defendant.

### ORDER

McCUSKEY, District Judge.

Following a denial of long-term disability benefits, James Latzke initiated this lawsuit against Continental Casualty Company, the administrator of his employer's benefits plan. Although the claim was originally filed in state court, Continental Casualty removed the action here based on this courts federal question jurisdiction over matters governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. (ERISA). Continental Casualty has now filed a Motion for Summary Judgment and/or Motion for Judgment on the Merits (# 7). Latzke filed a Response (# 8), and Continental Casualty then tendered a Reply Memorandum (# 10). This court has carefully considered these documents, which include the record of the administrative proceedings, and for the reasons discussed below, Continental Casualty's motion for summary judgment is granted.

### BACKGROUND

Latzke worked as a store manager for Kmart Corporation. On September 22, 2000, Latzke claims to have been diagnosed with depression, anxiety, and post-traumatic stress disorder. He began receiving short-term disability payments pursuant to Kmart's disability plan, and on March 23, 2001, he applied for long-term disability benefits.

Kmart's long-term benefits plan was funded by an insurance policy issued through Continental Casualty, and the plan provided that Continental Casualty retained discretionary authority to the determine eligibility for benefits. According to definitions in the plan, claimants must prove they are continuously disabled for the six months following the onset of their disability (the "elimination period"), at which point benefits will begin to accrue. "Disability," in general, refers to a physical or mental impairment that renders claimants continuously unable to perform their regular job responsibilities. For making the disability determination, the plan requires claimants to submit proof that they are under the care of a physician, objective medical findings supporting their claim of disability, and information about the extent of their disability and the limitations preventing them from working.

To gather Latzke's medial records, Continental Casualty faxed to Dr. Jay Liss, Latzke's psychiatrist, a Provider Report for Psychiatric/Psychological Claims form to fill out concerning Latzke's symptoms, diagnosis, treatment, and ability to work. When the due date for completing and returning these forms came, someone from Continental Casualty called Dr. Liss's office to confirm that he would supply the needed information. Continental Casualty then faxed another copy of the provider report to Dr. Liss, and he eventually responded to the request by providing notes from four of Latzke's office visits, but he left blank a substantial portion of the form.

Cathi Figoni, a Psychiatric Nurse Case Manager for Continental Casualty, reviewed the information Dr. Liss provided, as well as medical records from Dr. Patrick Cerra, Latzke's therapist. Figoni also looked over notes from Dr. Steven Kindred, Latzke's prior primary care physician, and Dr. Lee, although it is unclear what type of doctor he is. Moreover, Figoni interviewed Latzke himself.

Based on all of the information Figoni collected and synthesized, Continental Casualty denied Latzke's request for long-term disability benefits, finding that he did not meet the definition of "disability." Continental Casualty advised Latzke that "your doctors must be able to provide medical evidence of a physically or mentally disabling impairment that would prevent you from performing the substantial and material duties of your regular occupation."

Latzke requested that Continental Casualty reconsider its determination, although he did not submit any additional medical information. Continental Casualty referred his claim to the Appeals Committee for review, which eventually upheld the denial of benefits. The Appeals Committee found that, although Latzke's condition may have initially impaired his ability to work, medical records showed improvement during the relevant time period. Accordingly, Latzke did not satisfy the disability requirement.

Following the denial of his appeal, Latzke initiated this lawsuit, and Continental Casualty now claims that it is entitled to summary judgment.

## ANALYSIS

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed. R.Civ.P. 56(c); see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In evaluating a summary judgment motion, the court focuses on whether any material dispute of fact exists that would require a trial. *Winter v. Minn. Mut. Life Ins. Co.,* 199 F.3d 399, 408 (7th Cir.1999). In making this determination, the court construes all facts and draws all reasonable inferences in favor of the nonmoving party. *King v. Preferred Technical Group,* 166 F.3d 887, 890 (7th Cir.1999). Because the purpose of summary judgment is to isolate and dispose of factually unsupported claims, however, the nonmoving party must respond to the motion with evidence setting forth specific facts showing that there is a genuine issue for trial. *Michael v. St. Joseph County,* 259 F.3d 842, 845 (7th Cir.2001), *cert. denied,* — U.S. ——, 122 S.Ct. 2328, 153 L.Ed.2d 159 (2002).

In addition to a request for summary judgment, Continental Casualty also suggests that this court could enter judgment as a matter of law after reviewing the administrative record as described in *Wilkins v. Baptist Healthcare System, Inc.,* 150 F.3d 609 (6th Cir.1998). That proce-

dure has not yet been adopted in this circuit, and without instruction from the Seventh Circuit concerning the propriety of disposing of ERISA cases in that manner, this court will not entertain that possibility. *See, e.g., Stryker v. Cont'l Cas. Co.,* 2002 WL 1821907, at *7 n. 5 (S.D.Ind. 2002); *Reagan v. First UNUM Life Ins. Co.,* 39 F.Supp.2d 1121, 1128 n. 9 (C.D.Ill. 1999). Analysis will instead focus on whether the summary judgment standard has been met.

█ In ERISA cases, if the benefits plan at issue vests in the plan administrator discretion in making claim determinations, then the role of the court system is limited to analyzing whether the administrator abused that discretion by acting arbitrarily and capriciously. *Ladd v. ITT Corp.,* 148 F.3d 753, 753–54 (7th Cir.1998). This court will only reverse the decision of the plan administrator if it is "downright unreasonable." *James v. Gen. Motors Corp.,* 230 F.3d 315, 317 (7th Cir.2000); *Hightshue v. AIG Life Ins. Co.,* 135 F.3d 1144, 1147 (7th Cir.1998). A denial of benefits will be upheld if it was an informed judgment based on a reasonable interpretation of the plan documents, even if this court would have reached a different conclusion. *Carr v. Gates Health Care Plan,* 195 F.3d 292, 294 (7th Cir.1999).

█ Continental Casualty argues that the denial of benefits is supported by the administrative record and a reasonable interpretation of plan documents. Specifically, it relies on the disability requirements in the plan and the medical information gathered from Latzke's various doctors to support its conclusion that Latzke was not entitled to benefits. Keeping in mind the relevant six-month elimination period, which for Latzke's claim is September 23, 2000 through March 23, 2001, this court cannot conclude that Continental Casualty's decision was arbitrary or capricious. Indeed, the administrative record supported Continental Casualty's denial of benefits.

In early October 2000, Dr. Cerra, Latzke's therapist, noted that Latzke was suffering intense anxiety, panic and depressive symptoms, manifesting in insomnia, weight loss, crying spells, and poor concentration. Latzke reported job stress to Dr. Cerra, but planned to return to work in two or three weeks. A few days later, Dr. Kindred, Latzke's former primary care physician, diagnosed him to be suffering from depression and anxiety, but noted that his panic attacks were improving. Dr. Kindred referred Latzke to a psychiatrist, and observed that although he was currently unable to function in a work setting, he should be able to return to work within one month.

At Latzke's first appointment with his psychiatrist Dr. Liss, he reported symptoms of anxiety and depression. At the time, Latzke was taking both Xanax and Zoloft as treatment. After diagnosing Latzke as suffering from anxiety disorder with agoraphobia and depressive disorder, Dr. Liss recommended he take only the Zoloft. Later that same week, Dr. Lee diagnosed Latke with a recurrent depressive disorder brought on by his work situation and marital problems. Dr. Lee concluded that Latzke was unable to return to work due to lack of concentration and mental capacity.

In November 2000, Dr. Cerra again met with Latzke and noted that he was improving but that he still suffered some anxiety and depression. Dr. Cerra reported that, although Latzke was apprehensive about returning to work, he could likely sustain a six-hour work day given his desire to "coast" into mid-January and then retire.

At another visit with Dr. Liss in November, Latzke reported still being depressed and anxious and lacking energy and concentration. Dr. Liss noted that Latzke

was being tested for sleep apnea. At his appointment with Dr. Liss the following month, Latzke reported that he had suffered a panic attack and agoraphobia when he went into a Kmart store. Dr. Liss recommended that he continue taking Zoloft and also prescribed Paxil for the panic, noting that Latzke's panic problems were situational.

Latzke also discussed the panic attack he had with Dr. Cerra in January 2001. Dr. Cerra noted that Latzke was doing better, but appeared "rather avoidant and does not seem very motivated." Dr. Cerra told Latzke he needed to be seen on a weekly basis at that point. In Dr. Cerra's notes concerning Latzke's final visit with him at the end of January, he again mentioned a need to see Latzke more routinely. Dr. Cerra indicated that Latzke's next visit was scheduled for February 2001, at which point they would discuss returning to work because he felt that Latzke was "likely biding time until he can retire from the company."

At the end of February, Latzke again saw Dr. Liss, and he complained of depression, anxiety, agoraphobia, and lack of organization. Dr. Liss added a dose of Paxil to Latzke's medication.

In addition to providing copies of Latzke's office visits, Dr. Liss also returned the Provider Report for Psychiatric/Psychological Claims form, but much of the form was left blank. Dr. Liss did not, for example, list any symptoms Latzke exhibited, describe his functional capacity, or assess his mental status. Dr. Liss mentioned Paxil and Zoloft as Latzke's only current medications, and he noted that Latzke was being seen every one to two months. At the end of the form, Dr. Liss stated that Latzke was permanently disabled due to the severity of the depression and would be unable to perform his occupation. This diagnosis, however, was entirely unsupported and unexplained by the rest of the provider form or the medical records Dr. Liss submitted.

After summarizing the information received from Latzke's medical care providers, Continental Casualty found that it did not have enough objective medical evidence to find that Latzke was continuously disabled. Figoni, the case manager, was unsure why Dr. Liss omitted so many details from the provider form, and given the importance of a medical assessment of Latzke's symptoms and abilities, she was unable to determine Latzke's functionality. The other medical reports indicated that Latzke had symptoms of depression and anxiety but that he was being treated with medication and regular office visits. Continental Casualty concluded that nothing in the administrative record indicated a severe mental or emotional condition that would impair Latzke's abilities to the extent that he would be rendered disabled.

Continental Casualty argues that the administrative record supports its denial of long-term disability benefits. Nothing in this decision is a "downright unreasonable" interpretation of the available evidence. Accordingly, this court will not disturb the denial of long-term disability benefits.

Latzke's arguments to the contrary are not persuasive. He first suggests that Continental Casualty failed to consider medical findings of Drs. Lee, Kindred, and Liss, but the administrative record belies that contention. Clearly, based on the summary provided by Figoni, information from Drs. Lee, Kindred, and Liss was incorporated into the benefits determination.

Next, Latzke relies on the notes from his visits with Dr. Liss to argue that he was truly disabled. But Latzke is reading those forms incorrectly. The portions of the report that he points to as proof of his limitations are merely the subjective complaints he made to Dr. Liss. Given that the

plan specifically requires objective medical evidence of a disability, Continental Casualty was not unreasonable in giving little weight to Latzke's subjective assessments of his condition.

Finally, Latzke contends that Dr. Liss's notation on the claims form that he is permanently disabled and unable to return to work is sufficient to grant his request for benefits. But as Continental Casualty asserts, this conclusory statement does not rise to the level of an objective medical finding. Dr. Liss failed to support this claim with any other information concerning his testing, treatment, or diagnosis of Latzke or his disability and limitations. And the office notes he provided are mostly summaries of Latzke's complaints rather than any kind of diagnosis or assessment. It was not "downright unreasonable" for Continental Casualty to discount such an unsupported statement.

## CONCLUSION

IT IS THEREFORE ORDERED:

(1) The docket sheet will be changed to reflect the correct name of Defendant–Continental Casualty Company.

(2) Defendant's Motion for Summary Judgment (# 7) is GRANTED. Judgment is entered in favor of Defendant Continental Casualty Company and against Plaintiff James Latzke.

(3) This case is terminated.