In the

# United States Court of Appeals
### For the Seventh Circuit

No. 08-2923

THOMAS R. WETZLER,

*Plaintiff-Appellant,*

*v.*

ILLINOIS CPA SOCIETY & FOUNDATION
RETIREMENT INCOME PLAN AND
PLAN ADMINISTRATOR FOR THE ILLINOIS
CPA SOCIETY & FOUNDATION RETIREMENT
INCOME PLAN,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 07 C 1326—**Michael M. Mihm**, *Judge.*

ARGUED JANUARY 22, 2009—DECIDED NOVEMBER 10, 2009

Before MANION and KANNE, *Circuit Judges*, and
KENDALL, *District Judge.*\*

---

\* Hon. Virginia M. Kendall, District Judge for the Northern
District of Illinois, is sitting by designation.

KENDALL, *District Judge*.   After working twenty-two
years, Plaintiff Thomas Wetzler ("Wetzler") wanted a
lump-sum disbursement of his entire retirement
benefits from Illinois CPA Society & Foundation Retire-
ment Income Plan (the "Plan"). At the time of his
request, there were not enough assets in the Plan to
cover his lump-sum payment. His request would have
put the small plan in the hole and in violation of the
Internal Revenue Code. Explaining that its obligations
under the law and to the other participants in the Plan
required it to do so, the Plan refused his request. Wetzler
filed suit in the United States District Court alleging that
an Amendment to the plan violated the anti-cutback
provisions of the Employee Retirement and Income
Security Act ("ERISA") 29 U.S.C. § 1054(g). The district
court granted summary judgment in favor of defendants,
and Wetzler appealed. For the reasons stated below,
we affirm.

## Background

Wetzler began working at the Illinois CPA Society (the
"Society") in 1984 and participated in the Plan through-
out his employment. At the time of his retirement, Wetzler
was the Society's Vice President of Governmental Affairs
and qualified as a highly-compensated employee ("HCE")
under the terms of the Plan.

The Plan is a defined benefit plan consisting of less than
100 participants and is required to comply with the
ERISA, 29 U.S.C. § 1054(g) and Sections 401(a) and 501(a)

of the Internal Revenue Code. On the date that Wetzler retired, May 31, 2006, the plan had sixty-one participants and approximately $2 million in assets. Section 5.02(d) of the Plan provided that participants could select a "single sum cash payment" of their benefits.

The first and only HCE to retire under the Plan prior to Wetzler did so in 2002. At that time, the Society's actuary permitted that HCE to take a lump-sum payout of his benefits without providing any security to the Plan even though the Plan was underfunded. The Plan now maintains that this distribution was made in error. Indeed, such a lump-sum distribution was not permitted by the applicable Treasury Regulations.

The Plan maintains that it did not find out about the 2002 lump-sum distribution until 2004. Once it determined that the lump-sum distribution violated Treasury Regulations and therefore risked the Plan's tax status, the Board of Directors adopted Amendment One on June 24, 2004. This Amendment provided that all plan distributions would be subject to Treasury Reg. Sections 1.40(a)(4)-5(b)(2) and (3). In addition, restricted distributions made prior to July 1, 2004 would remain available if accompanied by the posting of security as permitted by Revenue Ruling 92-76. Specifically, the Amendment allowed a lump-sum distribution to an HCE if the HCE obtained the distribution before July 1, 2004 and provided security in the form of either: (1) an escrow account containing 125% of the distribution amount; (2) a letter of credit in the amount of the distribution; or (3) a bond in the amount of the distribution. The Plan adopted Amend-

ment One in order to correct the prior improper payout and protect the Plan from disqualification by the IRS.

When Wetzler retired from the Society in 2006, he received forms from the Society which listed a lump-sum disbursement as an option. Similarly, on May 18, 2006, Wetzler discussed his retirement options with the Society during a teleconference during which the lump-sum disbursement was discussed as an available option. The next day, however, the Society notified Wetzler that a lump-sum disbursement was unavailable due to the amount of disbursement. Wetzler elected to defer his benefits in a letter dated May 30, 2006.

In September of 2006, Wetzler requested a Plan Amendment that would allow him to receive a lump-sum disbursement of his benefits without posting security. The Executive Committee denied this proposal. Later, in January of 2007, Wetzler sent a letter demanding that his benefits be rolled into an IRA in a lump sum without any security. The Plan denied this request, noting specifically that because the Plan was underfunded, a lump-sum disbursement would violate Treasury Regulations and would cause the Plan to risk its tax-qualified status. Finally, Wetzler once again demanded a lump-sum distribution in a letter dated June 7, 2007, this time offering to post security. The Plan once again rejected his demand.

Wetzler filed this suit on August 7, 2007, arguing that Amendment One to the Plan violated the anti-cutback rules of ERISA by eliminating a previously-available benefit and that the Plan acted arbitrarily and capriciously

in denying his demands for a lump-sum distribution. The district court granted summary judgment in favor of the Plan noting that the Plan granted discretion to the administrator to interpret its terms. The district judge reviewed the administrator's interpretation under the deferential arbitrary and capricious standard and accepted the administrator's interpretation that a lump-sum distribution was not allowed before Amendment One and therefore such a distribution was not an accrued benefit and did not violate ERISA's anti-cutback provisions. The district judge concluded that the Plan's denials of Wetzler's requests for a lump-sum distribution were not arbitrary and capricious.

Wetzler appealed, arguing that the district court erred in: (1) applying the incorrect standard of review; (2) finding that Amendment One did not violate ERISA's anti-cutback provision; (3) concluding that lump-sum distributions were not allowed by the Plan prior to Amendment One; and (4) ruling that the Plan's denial of Wetzler's request for a lump-sum distribution was not arbitrary and capricious.

## Standard of Review

This Court reviews the district court's decision on cross-motions for summary judgment de novo. *See, e.g., Hess v. Reg-Ellen Mach. Tool Corp.*, 423 F.3d 653, 658 (7th Cir. 2005). In ERISA cases, denials of benefits are reviewed de novo unless the plan at issue gives the plan administrator discretion to construe the policy terms. *Id*. Where a plan administrator is given discretion to interpret the

provisions of the plan, the administrator's decisions are reviewed using the arbitrary and capricious standard. *James v. Gen. Motors Corp.*, 230 F.3d 315, 317 (7th Cir. 2000) citing *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Under that standard, an administrator's interpretation is given great deference and will not be disturbed if it is based on a reasonable interpretation of the plan's language. *Russo v. Health, Welfare & Pension Fund*, 984 F.2d 762, 765 (7th Cir. 1993) ("although it is an overstatement to say that a decision is not arbitrary and capricious whenever a court can review the reasons stated for the decision without a loud guffaw, it is not much of an overstatement"). An issue as to whether a certain term as construed violates ERISA is a question of law and as such, reviewed de novo. *Silvernail v. Ameritech Pension Plan*, 439 F.3d 355, 357 (7th Cir. 2006).

## Discussion

Wetzler first argues that the district court erred by using the arbitrary and capricious standard of review in ruling on the motions for summary judgment on the issue of whether Amendment One violated ERISA and asserts that a *de novo* standard of review should have been used because the question at issue was whether a term in the Plan violated ERISA.

Denials of benefits are reviewed de novo unless the plan at issue gives the plan administrator discretion to construe the policy terms. *Hess*, 423 F.3d at 658. If the administrator is given such discretion, then its decision

is reviewed under the "arbitrary and capricious" standard. *Id*. The Plan at issue here grants the administrator such discretion stating, "the Administrative Committee shall have . . . the power to interpret and construe the Plan, to determine all questions of eligibility, status and rights of Participants, their Beneficiaries, an others hereunder, to commute payments, and to decide any disputes arising hereunder."

The district court first had to determine whether a lump-sum distribution was available prior to Amendment One. That is, the anti-cutback rule of ERISA provides that "the accrued benefit of a participant under a plan may not be decreased by an amendment of the plan" 29 U.S.C. § 1054(g)(1). A plan amendment which has the effect of "eliminating an optional form of benefit, with respect to the benefits attributable to service before the amendment shall be treated as reducing accrued benefits." 29 U.S.C. § 1054(g). Therefore, before the district court could determine whether the Amendment violated ERISA, it first had to determine whether the option to receive a lump-sum distribution was available before, and then taken away, by Amendment One. This determination involved reviewing the administrator's interpretation of the provisions of the plan, which was appropriately conducted using the arbitrary and capricious standard.

Once the District Court concluded that the administrator's determination that a lump-sum distribution was not available before the amendment was not arbitrary and capricious, it correctly used *de novo* review in determining

if the plan violated the anti-cutback provisions of ERISA. *Compare Williams v. Rohm & Haas Pension Plan*, 497 F.3d 710, 712 (7th Cir. 2007) (since the parties agreed as to the effect of the terms of the plan, the court needed only to decide if that formulation violated ERISA). Therefore, the district court applied the correct standard of review to both the administrator's interpretation of the terms of the Plan and the legal determination of whether the plan violated the anti-cutback provisions of ERISA.

Wetzler next argues that the district court erred in finding that Amendment One did not violate the anti-cutback provisions of ERISA. According to the administrator's interpretation, Section 5.02, which allowed lump-sum distributions, must be read in conjunction with the Internal Revenue Code, and as such, a lump-sum distribution would not be available since it violated the code. Since the plan is intended to have a tax-qualified status, thereby allowing tax benefits for its beneficiaries, it must, as the Administrator asserted, comply with Section 401(a).

In order to comply with Section 401(a), the Plan must not discriminate significantly in favor of HCEs such as Wetzler. According to Treasury Regulation 1.401(a)(4)-5(b)(3)(i)(A), significant discrimination occurs if payments to an HCE exceed the amount equal to a straight life annuity to which the individual is entitled under the plan. 26 C.F.R. 1.401(a)4-5(b)(3). Such action, however, is not discriminatory if the plan assets exceed 110% of liabilities post-distribution, the distribution is less than 1% of current liabilities, or the benefits payable do not exceed the amount described in Section 411(a)(11)(A).

The parties agree that at all relevant times, the plan was underfunded, so a lump-sum distribution would have violated Section 401(a). Since the plan was intended to comply with § 401(a) at all times, both before and after Amendment One, it could not pay out the lump-sum payment that Wetzler wanted. Thus, the Administrator's interpretation of the plan such that a lump-sum benefit was not available to Wetzler prior to Amendment One is well-reasoned and not arbitrary and capricious.

Wetzler argues that I.R.S. Revenue Ruling 97-26 renders the administrator's decision arbitrary and capricious. Revenue Ruling 97-26 held that a lump-sum distribution may be allowed when a plan is underfunded if the HCE receiving the lump-sum payment provides an escrow account containing 125% of the distribution as security. Rev. Rul. 92-76, 1992-38 I.R.B. 5. Revenue rulings are not binding on this Court and we give them "the lowest degree of deference" which equates to "some deference" or "respectful consideration." *Bankers Life and Cas. Co. v. United States*, 142 F.3d 973, 978 (7th Cir. 1998). Regardless, no language permitting distributions like the language in the plan at issue in Revenue Ruling 92-76 is present in the CPA Society's Plan. The Administrative Committee's amendment to the Plan to include such language for a limited period of time supports the Plan's position that it did not intend to include such a provision in the first place. The Administrator's decision to require the plan to comply with the letter of the binding regulation as opposed to a Revenue Ruling entitled to the lowest degree of deference does not equate to unreasonableness. In light of the significant financial strain that would

be placed on the small, single-employer plan[1] and its potential loss of its tax status, the Administrator's decision could not be rendered arbitrary and capricious.

Since the Administrator's interpretation of the plan was not arbitrary and capricious, we turn to the issue of whether Amendment One, which allowed a lump-sum distribution to an HCE when the plan was underfunded between June 24, 2004 and July 1, 2004 so long as that HCE provided the relevant security, violated ERISA's anti-cutback provisions.

ERISA's anti-cutback provision states that "the accrued benefit of a participant under a plan may not be decreased by an amendment of the plan" 29 U.S.C. 1054(g)(1). The purpose of this provision is to protect "employees' justified expectations." *Cent. Laborers' Pension Fund v. Heinz*, 541 U.S. 739, 743 (2004). For example, in *Heinz*, the plan at issue suspended payments to retired beneficiaries if they engaged in "disqualifying employment" and after Heinz's retirement, amended the definition of disqualifying employment to include working as a supervisor. *Id*. at 740. In finding that this amendment

---

[1] Notably, the Plan submitted additional authority after oral argument indicating that it would not be easy for the Plan to collect on any security provided to it by HCEs who received lump-sum distributions. Rather, the administrator "could draw on an HCE's letter of credit only in the event of plan termination, and then only if the HCE fail[ed] to repay amounts needed to distribute the Plan's remaining assets in a manner that [did] not discriminate in favor of HCEs."

violated ERISA's anti-cutback provision, the Court determined that Heinz had accrued benefits under the plan allowing him to supplement his retirement income by working as a supervisor and those benefits were curtailed by the amendment. *Id*. at 741.

As set forth in ERISA's anti-cutback provision, an accrued benefit is separate and distinct from an "optional form of benefit" despite the fact that the statute treats a plan amendment which reduces or eliminates an "optional form of benefit" as reducing accrued benefits. 29 U.S.C. § 1054(g)(1) ("A plan amendment which has the effect of eliminating an optional form of benefit, with respect to the benefits attributable to service before the amendment shall be treated as reducing accrued benefits."). Title 29 United States Code Section 1002(23)(A) defines "accrued benefit" as "the individual's accrued benefit determined under the plan . . . expressed in the form of an annual benefit commencing at the normal retirement age." 29 U.S.C. § 1002(23)(A). An "optional form of benefit" is not defined in ERISA, and while its meaning is obscure, it is generally a benefit that involves the right of a plan participant to choose the way in which his payments under a plan will be made or applied. *See Call v. Ameritech Mgmt. Pension Plan*, 475 F.3d 816, 821 (7th Cir. 2007). A plan participant's ability to take a lump-sum distribution of benefits is an "optional form of benefit" as defined by the anti-cutback provision of ERISA. *Id*. Therefore, for purposes of the statutory anti-cutback provision, a plan amendment may not eliminate one's entitlement to take his pension benefits as a lump sum at normal retirement age. *See* 29 U.S.C. § 1054(g)(1).

Here, Wetzler asserts that the implementation of Amendment One violated ERISA's anti-cutback provision because Amendment One eliminated a pre-existing "optional form of benefit," namely the ability to receive a lump-sum distribution. As found above, however, due to underfunding, HCEs never had the option of collecting lump-sum distributions prior to Amendment One, which makes this case distinct from *Heinz* where the amendment altered a pre-existing benefit. While the anti-cutback provision in Section 204(g)(2)(B) of ERISA states that eliminating an "optional form of benefit" shall be treated as reducing accrued benefits, Section 204(g)(2) only applies if the benefit—a lump-sum distribution—qualifies as an "optional form of benefit" and is therefore "attributable to service before the amendment . . . ." 29 U.S.C. § 1054(g)(2). As the Plan rightly argues, Amendment One did not eliminate or affect any lump-sum option that was previously available to plan members. Instead, the Amendment gave the Plan a way of correcting a distribution that was not allowed under the Treasury Regulations at the time it was made. Because plan participants were not entitled, under the Plan, to a lump-sum distribution, Amendment One did not eliminate an "optional form of benefit" and does not violate ERISA's anti-cutback provision. *See Herman v. Cent. States, Southeast & Sw. Areas Pension Fund*, 423 F.3d 684, 692 (7th Cir. 2005) (an amendment that does not render any person ineligible for benefits for which he or she was previously eligible does not violate the anti-cutback provision).

Furthermore, even if the right to receive lump-sum distributions had been an "optional form of benefit" that was "attributable to service" prior to Amendment One, Amendment One brought the Plan into compliance with the Internal Revenue Code and accompanying Treasury Regulations, *see* I.R.C. § 401(a); 26 C.F.R. 1.401(a)4-5(b)(3), bringing it outside the ambit of ERISA's anti-cutback statute. *See* 29 U.S.C. § 1054(g)(2) ("The Secretary of the Treasury may by regulations provide that this subparagraph shall not apply to a plan amendment [eliminating an optional form of benefit] (other than a plan amendment having [the effect of eliminating or reducing an early retirement benefit or a retirement-type subsidy].").

Finally, Wetzler argues that the Administrative Committee's decision denying his request for a lump-sum distribution was arbitrary and capricious. "Absent special circumstances, such as fraud or bad faith, the plan administrator's decision may not be deemed arbitrary and capricious so long as it is possible to offer a reasoned explanation, based on the evidence, for that decision." *Semien v. Life Ins. Co. of N.A.*, 436 F.3d 805, 812 (7th Cir. 2006) citing *Trombetta v. Cragin Fed. Bank for Savings Employee Stock Ownership Plan*, 102 F.3d 1435, 1438 (7th Cir. 1996). Here, the administrator had a clear reasonable basis for denying a lump-sum distribution since it would have put the Plan in deficit and would have violated the Internal Revenue Code, thus risking the tax status of the plan for all of its participants.

As the District Court accurately stated, "since a lump-sum distribution without security was never available

to Wetzler under the terms of the Plan, and was not available with security any time other than the limited time provided in the Amendment, the denial of his claim cannot be arbitrary and capricious." Although Wetzler would like to hold the Plan to the mistake that it made in allowing the one-time lump-sum payment to the previous HCE who received it, the district court correctly held that the evidence supported that the payment was a mistake and was immediately corrected upon discovery by the Plan which required the former CEO to post security for the distribution as part of its effort to correct the mistake and protect the Plan's tax-deferred status. It was not arbitrary and capricious for the Plan to deny Wetzler's requests for a lump-sum distribution simply because it had, in error, made such a lump-sum distribution in the past and attempted to correct it. It was reasonable for the administrator to take actions to protect the financial viability of the Plan for its members.

The district court applied the proper standards of review and did not err in finding that the administrator's interpretation of the Plan's terms was not arbitrary and capricious, that the plan therefore did not violate the anti-cutback provisions of ERISA and that the administrator's decision to deny a lump-sum distribution to Wetzler was not arbitrary and capricious. Therefore, we AFFIRM.