20-3791-cv
Metzgar v. U.A. Plumbers & Steamfitters Loc. No. 22 Pension Fund

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 2nd day of March, two thousand twenty-two.

PRESENT:
        **MICHAEL H. PARK,**
        **BETH ROBINSON,**
           *Circuit Judges*,
        **JED S. RAKOFF,***
           *District Judge.*

---

**GARY METZGAR, RICHARD MUELLER, KEVIN REAGAN, RONALD REAGAN, CHARLES PUGLIA, SHERWOOD NOBLE, DANIEL O'CALLAGHAN,**

        *Plaintiffs-Counter-Defendants-Appellants*,

        v.                              **20-3791**

**U.A. PLUMBERS AND STEAMFITTERS LOCAL NO. 22 PENSION FUND, BOARD OF TRUSTEES OF U.A. PLUMBERS AND STEAMFITTERS LOCAL NO. 22 PENSION FUND, DEBRA KORPOLINKSI, in her capacity as PLAN ADMINISTRATOR, FOR THE U.A. PLUMBERS & STEAMFITTERS LOCAL 22 PENSION FUND,**

        *Defendants-Counter-Claimants-Appellees.*

---

      * Judge Jed S. Rakoff, of the United States District Court for the Southern District of New York, sitting by designation.

**FOR PLAINTIFFS-COUNTER-DEFENDANTS-APPELLANTS:** CHRISTEN ARCHER PIERROT, Orchard Park, NY.

**FOR DEFENDANTS-COUNTER-CLAIMANTS-APPELLEES:** JULES L. SMITH (Daniel R. Brice, *on the brief*), Blitman & King LLP, Rochester, NY.

Appeal from a judgment of the United States District Court for the Western District of New York (Sinatra, *J.*; Foschio, *M.J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiffs are participants in the U.A. Plumbers & Steamfitters Local 22 Pension Fund (the "Fund"), a defined benefit multi-employer pension plan governed by an Agreement and Declaration of Trust (the "Trust"). Pension benefits are provided to participants according to a Restated Plan of Benefits (the "Plan"), which is subject to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461. Under the Trust, the Trustees have "full and exclusive discretionary authority to determine all questions of coverage and eligibility" and "full discretionary power to interpret the provisions of this Trust Agreement and the Plan of Benefits, and the terms used in these documents." App'x at 192–93.

At all times relevant to this appeal, the Plan set the normal retirement age at 65, but it also offered "Special Early Retirement" to "[a]ny Employee who retires . . . after his fifty-fifth (55th) birthday and whose combined age and Years of Special Service shall equal eighty-five (85) or more." App'x at 248. The Plan also provided that a participant's monthly benefit would be suspended for any month in which they worked in disqualifying employment, which included "any occupation covered by the Plan," but excluded non-disqualifying employment, such as in "a managerial position [or as a] project manager or estimator." *Id*. at 251. Until the fall of 2011, the Plan was administered with the understanding that participants did not have to completely stop

2

working for a covered employer in order to receive special early retirement pension payments—instead, they could continue working while receiving pension benefits as long as they switched from disqualifying employment to non-disqualifying employment. Plaintiffs here switched from disqualifying to non-disqualifying employment upon receiving approval for special early retirement, thus both earning a salary from their non-disqualifying employment and receiving pension benefits through the Plan.

In the fall of 2011, the Plan Trustees concluded that the Plan could not be interpreted to allow special early retirement pension payments to participants who had not "retired" under the terms of the Plan. Relying on their understanding of the Internal Revenue Code requirements applicable to the Plan, the Trustees interpreted the term "retire" to mean that a participant "must sever employment [with all employers that contribute to the Plan] with no intent of returning to employment." App'x at 494. They sent a letter to Plaintiffs, which stated that Plaintiffs had to cease their then-current (non-disqualifying) employment in order to continue receiving their pensions; failure to do so would result in suspension of pension payments. Some Plaintiffs stopped working for their employers altogether and the Fund continued their pension payments; others continued working in non-disqualifying positions and the Fund discontinued their pension payments.

On January 25, 2013, Plaintiffs sued the Fund, its Board of Trustees, and Debra Korpolinski in her capacity as Plan Administrator for the Fund (collectively, "Defendants"), in the United States District Court in the Western District of New York. Plaintiffs claimed that Defendants' reinterpretation of the Plan and the subsequent choice they forced Plaintiffs to make between keeping their pensions or their jobs was (1) a violation of ERISA's anti-cutback rule, 29 U.S.C. § 1054(g); (2) a wrongful denial of benefits, *id*. § 1132(a)(1)(B); and (3) a breach of

3

Defendants' fiduciary duty to Plaintiffs, *id*. § 1104(a)(1). Both parties moved for summary judgment, and Plaintiffs also filed a motion for a preliminary injunction to enjoin Defendants from withholding 25% of Plaintiffs' monthly pension payments, which Defendants started doing in January 2017 to recoup prior payments to Plaintiffs that Defendants concluded were made in violation of the Internal Revenue Code. The district court granted Defendants' motion for summary judgment and denied Plaintiffs' motions for summary judgment and a preliminary injunction. Plaintiffs timely appealed. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

"We review the district court's decision to grant summary judgment *de novo*, construing the evidence in the light most favorable to the party against which summary judgment was granted and drawing all reasonable inferences in its favor." *Halo v. Yale Health Plan, Dir. of Benefits & Recs. Yale Univ.*, 819 F.3d 42, 47 (2d Cir. 2016) (citation omitted). "[W]here the written plan documents confer upon a plan administrator the discretionary authority to determine eligibility, we will not disturb the administrator's ultimate conclusion unless it is 'arbitrary and capricious.'" *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 441 (2d Cir. 1995). A plan administrator's decision is arbitrary and capricious if it is "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Id.* at 442 (citation omitted).

The Trust gives Defendants full discretionary authority to determine eligibility and to interpret the terms of the Plan. We thus defer to their interpretation of the Plan and conclude that all of Plaintiffs' claims fail because Defendants' interpretation was reasonable and not arbitrary and capricious. *See Jordan v. Ret. Comm. of Rensselaer Polytechnic Inst.*, 46 F.3d 1264, 1271 (2d Cir. 1995) ("The court may not upset a reasonable interpretation by the [plan] administrator.").

Specifically, Defendants reasonably interpreted the Plan to require participants to separate from all employment with a contributing employer prior to receiving pension benefits.

The text of the Plan states: "Any Employee who *retires*" and who fulfills other requirements is entitled to a special early retirement pension. App'x at 248 (emphasis added). "In common parlance, retire means to leave employment after a period of service." *Meredith v. Allsteel, Inc.*, 11 F.3d 1354, 1358 (7th Cir. 1993), *overruled on other grounds by Ahng v. Allsteel, Inc.*, 96 F.3d 1033 (7th Cir. 1996). The Trustees concluded that to "retire" under the Plan required separation from "employment with all employers that contribute to the Plan." App'x at 494. Contrary to Plaintiffs' argument, such a definition would not "render meaningless" the Plan provision allowing post-retirement employment in "non-disqualifying employment"—it would simply require participants actually to retire first and to separate completely from their prior employment before becoming reemployed in non-disqualifying employment. Appellant's Br. 42. We do not suggest that the Trustees' interpretation of the meaning of "retire" is the only reasonable interpretation; but we cannot conclude that the interpretation is arbitrary and capricious.

In addition, this *reinterpretation* of the Plan was not arbitrary and capricious because Defendants reasonably understood that it was necessary to avoid violating § 401(a) of the Internal Revenue Code, 26 U.S.C. § 401(a), thereby jeopardizing the Fund's tax-exempt status.[1] Section 401(a)(36)(A) implies that if a plan allowed for distribution to a participant under age 59½ who has not separated from employment, the plan would violate § 401(a). *See id.* § 401(a)(36)(A) ("A trust forming part of a pension plan shall not be treated as failing to constitute a qualified trust

---

[1] We express no opinion on whether distributing pension benefits to participants who have terminated their disqualifying employment but have not separated from all employment for a contributing employer would *actually* violate § 401(a).

5

under this section solely because the plan provides that a distribution may be made from such trust to an employee who has attained age 59½ and who is not *separated from employment* at the time of such distribution." (emphasis added)).   Several federal district courts have upheld trustee interpretations of pension plans based on similar concerns about violating § 401(a).   *See Meakin v. Cal. Field Ironworkers Pension Trust*, No. 5:16-cv-07195, 2018 WL 405009, at *6 (N.D. Cal. Jan. 12, 2018), *aff'd*, 774 Fed. App'x 1036 (9th Cir. 2019) ("[I]t was reasonable for the Trustees to conclude that, in order to maintain a tax-exempt status under § 401(a), a plan could not allow pension payments to individuals who had not had a severance from their employment."); *Maltese v. Nat'l Roofing Indus. Pension Plan*, No. 5:16-cv-11, 2016 WL 7191798, at *4 (N.D. W. Va. Dec. 12, 2016) ("Based on the applicable regulations and the IRS's application of § 401(a), the Trustees' interpretation . . . is reasonably calculated to ensure that beneficiaries intend to actually separate from employment before early retirement benefits are distributed, thus, retaining the Plan's tax-exempted status.").

In light of this, Plaintiffs' challenges to Defendants' reinterpretation of the Plan terms are unavailing.   First, Defendants did not violate ERISA's anti-cutback rule, which states that "[t]he accrued benefit of a participant under a plan may not be decreased by an amendment of the plan." 29 U.S.C. § 1054(g)(1).   Plaintiffs argue that Defendants' reinterpretation of the Plan was an amendment and that the accrued benefit they lost was the ability to receive their special early retirement pensions upon terminating their covered employment and commencing non-disqualifying employment with a contributing employer.   The Plan has always required that to be entitled to special early retirement a participant must (1) retire (2) on or after reaching the age of fifty-five and (3) have a combined age and years of special service of eighty-five or more. Notably, the Plan did not purport to define "retire" prior to a February 2012 amendment.

Although in practice Defendants previously permitted special early retirement distributions when a participant left disqualifying employment for non-disqualifying employment, the implication of their reasonable interpretation of the Plan is that it never actually allowed for such distributions. In the circumstances of this case, this reinterpretation is not arbitrary and capricious. *See Wetzler v. Ill. CPA Soc'y & Found. Ret. Income Plan*, 586 F.3d 1053, 1057 (7th Cir. 2009) (holding that a plan administrator's current determination that a certain benefit was not available before the alleged amendment is evaluated under the arbitrary and capricious standard).

Nor was Defendants' reinterpretation an "amendment" because "[e]ven broadly interpreted, the word 'amendment' contemplates that the actual terms of the plan changed in some way, . . . or that the plan improperly reserved discretion to deny benefits," neither of which occurred here.[2] *Kirkendall v. Halliburton, Inc.*, 707 F.3d 173, 184 (2d Cir. 2013). We thus conclude that Plaintiffs' anti-cutback claim fails because, under Defendants' reinterpretation of the Plan, they were never entitled to the accrued benefit they claim to have lost, and Defendants' reinterpretation was not an "amendment."

Second, Defendants did not wrongfully deny Plaintiffs benefits in violation of 29 U.S.C. § 1132(a)(1)(B) by requiring them to choose between continuing to receive pension benefits and continuing to work in non-disqualifying employment for a contributing employer. "[W]here . . . the relevant plan vests its administrator with discretionary authority over benefits decisions . . . the administrator's decisions may be overturned only if they are arbitrary and capricious." *Roganti v. Metro. Life Ins. Co.*, 786 F.3d 201, 210 (2d Cir. 2015). As explained above, Defendants' decision to require Plaintiffs either to stop working or to stop receiving pension benefits was not

---

[2] Although Defendants made a formal amendment to the Plan in February 2012 reflecting their reinterpretation, Defendants' 2011 reinterpretation is the basis for Plaintiffs' anti-cutback claim.

arbitrary and capricious because it was based on a reasonable interpretation of the Plan.  We thus affirm the district court's conclusion that Defendants did not wrongfully deny benefits to Plaintiffs.

Third, Plaintiffs fail to show that Defendants breached their fiduciary duty under ERISA by failing to act "with the care, skill, prudence, and diligence under the circumstances then prevailing" that a "prudent" person would exercise.  29 U.S.C. § 1104(a)(1).  Specifically, Plaintiffs do not show how Defendants' decision in late 2011 to correct what they reasonably thought was an erroneous interpretation of the Plan in order to protect its tax-exempt status demonstrated a failure to exercise "care, skill, prudence, and diligence."[3]  *Id.*

Finally, we discern no abuse of discretion in the district court's decision to deny Plaintiffs' motion for a preliminary injunction.  Plaintiffs have failed to demonstrate that they would suffer irreparable harm absent an injunction—the loss of monetary pension benefits alone does not constitute irreparable harm because it can be remedied by money damages.[4]  *Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328, 332 (2d Cir. 1995) ("To establish irreparable harm, the movant must demonstrate an injury . . . that cannot be remedied by an award of money damages." (cleaned up)); *see also Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("[T]he temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury.").

---

[3] Plaintiffs also argue that if Defendants' initial interpretation was truly erroneous, then questions of fact exist as to whether that initial approval of Plaintiffs' early retirement benefits was a breach of fiduciary duty.  Plaintiffs did not include this claim in their complaint and failed to raise it either in their motion for summary judgment or in opposition to Defendants' motion for summary judgment.  It was alluded to only briefly in Plaintiffs' objection to the magistrate judge's report and recommendation, and the district court never addressed it.  The issue was thus not "properly raised below" and we decline to consider it.  *Caiola v. Citibank, N.A.*, 295 F.3d 312, 328 (2d Cir. 2002).

[4] Plaintiffs also argue that they do not need to show irreparable harm to be entitled to a preliminary injunction.  We do not reach this argument because it was raised for the first time on appeal.  *See United States v. Wasylyshyn*, 979 F.3d 165, 172 (2d Cir. 2020) ("As a general rule, we will not consider arguments first raised on appeal to this court.").

We have considered the remainder of Plaintiffs' arguments and find them to be without merit. Accordingly, we affirm the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court