EDITH BROWN CLEMENT, Circuit Judge:
A federal magistrate judge tried defendant-appellant David W. Hollingsworth (“Hollingsworth”) for a petty offense committed on a federal enclave.[1] The magistrate judge conducted a bench trial, en *558 tered a verdict of guilty, and sentenced Hollingsworth to six months in federal prison. Hollingsworth appealed to the federal district court.[2] The district court affirmed the judgment and sentence entered by the magistrate judge.[3] Hollingsworth now appeals to this court.[4] For the reasons explained below, we AFFIRM the judgment of the district court.
Facts and Proceedings
Hollingsworth was charged with violating 18 U.S.C. § 113(a)(5), a petty offense,[5] at the Naval Air Station Joint Reverse Base New Orleans, a military base located in Belle Chasse, Louisiana (“Belle Chasse”). It is uncontested that Belle Chasse is a federal enclave under U.S. Const. Art. I, § 8, cl. 17 (“Clause 17”),[6] and § 113 is effective on such enclaves. See 18 U.S.C. § 113(a) (providing that law applies “within the special maritime and territorial jurisdiction of the United States”). Hollingsworth objected to trial before the federal magistrate judge, but the magistrate judge held that she had jurisdiction to try Hollingsworth without his consent. Hollingsworth appealed his conviction to the district court, arguing that he had a right to a jury trial. The district court affirmed the conviction and sentence entered by the magistrate judge.
Standard of Review
We apply the same standard of review used by the district court. Peck, 545 F.2d at 964 (“In our review we apply to the magistrate the same standard used by the district court.”). Thus we review the magistrate judge’s findings of fact for clear error and conclusions of law de novo. Compare Fed. R. Crim. P. 58(g)(2)(D) (providing that district court’s review of magistrate judge’s judgment “is the same as in an appeal to the court of appeals from a judgment entered by a district judge”), with Mid-Continent Cas. Co. v. Davis, 683 F.3d 651, 654 (5th Cir.2012) (“In an appeal from a district court’s final judgment following a bench trial, we review the district court’s findings of fact for clear error and review conclusions of law de novo.”).
*559 Discussion
I.
A.
Hollingsworth now argues for the first time that he has a constitutional right to trial before an Art. Ill judge.[7] The Government argues that, because Belle Chasse is a federal enclave, Hollingsworth does not have a right to trial before an Art. Ill judge.
In Palmore v. United States, 411 U.S. 389, 93 S.Ct. 1670, 36 L.Ed.2d 342 (1973), the Supreme Court held that “Congress [is] not required to provide an Art. Ill court for the trial of criminal cases arising under its laws applicable only within the District of Columbia.” Id. at 410, 93 S.Ct. 1670.[8] Hollingsworth was tried for the violation of a federal criminal statute that applies only “within the special maritime and territorial jurisdiction of the United States.” 18 U.S.C. § 113(a)(5). Thus under Palmore, Hollingsworth has no constitutional right to trial before an Art. III court. See Jenkins, 734 F.2d at 1326 (holding that “the requirements of Article III are consistent with the establishment by Congress of non-Article III courts to enforce federal criminal laws” in Clause 17 federal enclaves).
Hollingsworth also argues that, even if Congress could refer his trial to an Article I court under Clause 17, the magistrate judge who heard his case is not a member of such a court. But Congress “exercise[s] within [federal enclaves] all legislative powers that the legislature of a state might exercise within the State, and may vest and distribute the judicial authority in and among courts and magistrates, and regulate judicial proceedings before them, as it may think fit, so long as it does not contravene any provision of the constitution of the United States.” Palmore, 411 U.S. at 397, 93 S.Ct. 1670 (quoting Capital Traction Co. v. Hof, 174 U.S. 1, 5, 19 S.Ct. 580, 43 L.Ed. 873 (1899)). Hollingsworth fails to cite any constitutional provision that Congress violated when it referred his trial to a federal magistrate judge. Indeed, the particular facts of Hollingsworth’s case show that, as applied, Congress has not even entered the constitutional borderlands. Pursuant to Clause 17, Congress could have referred all trials for crimes committed at Belle Chasse to an Article I judge, including felony trials. See Palmore, 411 U.S. at 391, 93 S.Ct. 1670 (explaining that Palmore was tried and found guilty of a felony in an Article I court). But Congress chose to refer only trials for petty offenses to federal magistrate judges. Moreover, it is not clear *560 that Hollingsworth has a constitutional right to appeal to an Art. Ill court, yet Congress granted him the right to appeal to not one but two Art. Ill courts.
We hold that Hollingsworth did not have a right to trial before an Art. Ill judge, and that his trial, conviction, and sentence before a federal magistrate judge was constitutional. Because we are bound “never to anticipate a question of constitutional law in advance of the necessity of deciding it,” United States v. Raines, 362 U.S. 17, 21, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960), our holding applies only to defendants tried for petty offenses committed on federal enclaves obtained by Congress pursuant to Clause 17.[9]
B.
In response to the dissent, we begin by noting a historical fact that the dissent passes over. From 1894 until 1948, Congress referred trials for misdemeanors committed on certain federal lands to the federal magistracy.[10] The statutes refer *561 ring such trials did not require the defendant’s consent as a prerequisite to the magistrate’s jurisdiction. See statutes cited supra note 10. This fact is relevant for two reasons. First, it shows that the dissent is wrong to claim that the federal magistracy has always been an “adjunct body,” “statutorily, historically, and doctrinally” (footnotes omitted). Second, the Supreme Court’s non-delegation caselaw requires us to consider historical context and practice when construing the “literal command of Art. III.” N. Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 64, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (plurality opinion); see also NLRB v. Canning, - U.S. -, 134 S.Ct. 2550, 2560, 189 L.Ed.2d 538 (2014) (holding that historical practice is important when courts interpret the Constitution, “even when the nature or longevity of that practice is subject to dispute, and even when that practice began after the founding era”). We have not found evidence that a defendant tried under the statutes referring misdemeanor trials to commissioners ever challenged the constitutionality of the delegation. Indeed, in the only case we have identified addressing a commissioner’s jurisdiction to hear a misdemeanor case under such a statute, neither the defendant nor the court saw fit to even raise the issue. See Rider v. United States, 149 F. 164, 166-67, 170 (8th Cir.1906) (vacating defendant’s misdemeanor conviction because he was tried before general commissioner, instead of commissioner specifically appointed to hear cases arising on federal land, as envisioned in statute). The fact that these statutes survived unchallenged for more .than half a century ought to inform our constitutional analysis.
We also disagree with the dissent on two theoretical issues. First, the dissent insists that this case involves Art. Ill “federal judicial power” and proceeds as if this distinction carries the day. The Supreme Court once “suggested a rigid distinction between those subjects that could be considered only in Art. Ill courts and those that could be considered only in legislative courts.” Marathon, 458 U.S. at 63 n. 14, 102 S.Ct. 2858 (plurality opinion). But the Court’s “more recent cases clearly recognize that legislative courts may be granted jurisdiction over some cases and controversies to which the Art. Ill judicial power might also be extended.” Id.; see also id. at 113, 102 S.Ct. 2858 (White, J., dissenting) (stating that “[tjhere is no difference in principle between the work that Congress may assign to an Art. I court and that which the Constitution assigns to Art. III courts”); Palmore, 411 U.S. at 402, 93 S.Ct. 1670 (explaining that “the enforcement of federal criminal law” has never “been deemed the exclusive province of federal Art. Ill courts”). By relying on the outdated notion that federal judicial power can never be assigned to legislative courts, the dissent’s reasoning is wrong from the start.
Instead of asking whether this case involves “federal judicial power,” the Supreme Court’s caselaw makes clear that we should ask a simpler question: whether the case arose in a “geographical area[ ], in which no State operate[s] as sovereign.” Marathon, 458 U.S. at 64, 102 S.Ct. 2858 (plurality opinion). The Constitution and the Supreme Court’s caselaw define these areas. They include United States territories, the District of Columbia (“D.C.”), Indian territories, and foreign areas over which the United States has jurisdiction to *562 try American citizens by treaty. See id. at 65 & n. 16, 102 S.Ct. 2858.[11] And, as we explained above, the Supreme Court has left no doubt that the geographical exception applies to all Clause 17 federal enclaves, not just D.C. See supra note 8. Because Hollingsworth’s crime occurred in a Clause 17 federal enclave, Congress had the power to refer Hollingsworth’s trial to a legislative court, regardless of the fact that the magistrate judge exercised federal judicial power that normally resides in the Art. Ill courts.
Second, the dissent argues that the federal magistracy is an “adjunct body.” Of course, the magistrate judge did not act as an adjunct in this case; she exercised full judicial power over Hollingsworth’s criminal trial. See Stern v. Marshall, - U.S. -, 131 S.Ct. 2594, 2610-11, 180 L.Ed.2d 475 (2011) (explaining that a court that resolves all issues of law and fact, enters final judgment, and is reviewed under ordinary appellate standard “is no mere adjunct of anyone”). Thus the dissent must mean that the federal magistracy should be an adjunct body. The dissent’s only justification for this argument is its assertion that the federal magistracy is “different in kind from Article I ‘legislative courts.’ ” The dissent fails to explain how the federal magistracy is different in kind, and we discern nothing in the various statutes authorizing legislative courts to justify the claim.
It is true that magistrate judges are appointed by district courts,[12] not by the President with the advice and consent of the Senate, as legislative and territorial judges often are.[13] But magistrate judges are not the only legislative judges appointed by other federal agencies or officers,[14] or even the only ones appointed by Art. Ill judges.[15] Magistrate judges receive a salary that approaches that of some legislative judges,[16] and exceeds that of oth *563 ers.[17] And magistrate judges’ terms of appointment and job protections are similar to those offered to other legislative judges.[18] Magistrate judges have the professional competence and resources found in the legislative courts. We discern no meaningful difference between the federal magistracy and the legislative courts. Indeed, because the federal magistracy’s members are appointed by federal judges instead of the President or the President’s appointees, we can have greater confidence in federal magistrate judges’ ability to fairly exercise federal judicial power and to avoid diminution of the separation of powers. Cf. Marathon, 458 U.S. at 63-64, 102 S.Ct. 2858 (plurality opinion) (explaining that legislative courts exception to Art. Ill did not threaten the separation of powers). The “differen[ce] in kind” that motivates our decision is Congress’s “plenary authority” over Clause 17 federal enclaves. Id. at 75, 102 S.Ct. 2858 (explaining that Congress’s power over D.C. is “obviously different in kind from other broad powers conferred on Congress” in Article I).
The dissent contends that we overlook relevant Supreme Court opinions. But nothing in the cases the dissent refers to purports to overrule Palmore. Because Palmore remains good law, we do not understand the dissent’s objection to our reliance on it, especially since its relevance here is so obvious.[19] The cases the dissent refers to, including CFTC v. Schor, 478 U.S. 833, 106 S.Ct. 3245, 92 L.Ed.2d 675 (1986), have much to say about Congress’s attempts to assign a whole area of law to legislative courts. See id. at 853-54, 106 S.Ct. 3245. They have little to say about Congress assigning cases that arise in a special geographic area to legislative courts. Cf. Marathon, 458 U.S. at 76, 102 S.Ct. 2858 (plurality opinion) (explaining that Palmore did not mean that Congress could create legislative courts “in every area in which Congress may legislate,” only that it could create legislative courts when it exercises plenary power “in limited geographic areas”).
The dissent also raises several practical concerns about our decision. The dissent worries that “[fjederal enclaves are neither few nor small.” But the Constitution does not empower us to decide how much federal land is too much. Rather, the Constitution leaves that decision to the Government and the State legislatures. See Clause 17 (authorizing Congress to exercise exclusive jurisdiction over lands purchased by Congress for military installations “and other needful Buildings,” with “the Consent of the Legislature of the State in which the Same shall be”).
The dissent also faults us for failing to identify a “limiting principle” that will restrain Congress from referring “federal criminal felony (even capital) cases that *564 might arise in a federal enclave” to federal magistrate judges. There is no death penalty in D.C., but the legislative courts there frequently try defendants for serious felonies. See, e.g., McKnight v. United States, 102 A.3d 284 (D.C.2014) (upholding defendant’s conviction in D.C. Superior Court for first-degree murder). If Congress may refer trials for crimes committed in D.C. to legislative judges, we do not understand why the dissent worries (hypothetically) about that happening in other Clause 17 federal enclaves. Of course, both in D.C. and elsewhere, Congress’s power to refer trials to legislative courts may turn on whether the relevant federal statute relates to an issue of national concern, or to “matters of strictly local concern” like local criminal activity. See Palmore, 411 U.S. at 405-07, 93 S.Ct. 1670.
The dissent contends that our decision will result in absurd consequences. It postulates that, where an oceanside federal enclave abuts state land, “whether a defendant has a right to be tried by an Article III judge will depend on which of the neighboring piers he is standing on.” But whenever events occur along jurisdictional borders, courts must engage in jurisdictional line-drawing. To provide only one example, this court once held that the federal courts had concurrent jurisdiction with the state courts “if the crime charged ... was committed on the ocean below the low-water mark.” Murray v. Hildreth, 61 F.2d 483, 485 (5th Cir.1932). It follows that, should a defendant commit a crime at high tide, just above the low-water mark, the federal courts could offer him no rescue. Jurisdiction often turns on just such narrow considerations.
II
Hollingsworth argues that his conviction should be overturned because he was denied the right to a jury trial. But it is well-established that those charged with petty offenses do not have a right to a jury trial. See, e.g., Lewis v. United States, 518 U.S. 322, 325-26, 116 S.Ct. 2163, 135 L.Ed.2d 590 (1996) (explaining that there is no right to jury trial for petty offenses, and that crimes with a six month maximum prison term are presumed petty). Hollingsworth concedes that this argument is foreclosed by binding precedent.
We hold that Hollingsworth did not have a right to a jury trial.
Conclusion
For the reasons explained above, we AFFIRM the judgment of the district court.

. The federal magistrate judge was authorized to hear Hollingsworth’s case under 18 U.S.C. § 3401(b) (giving magistrate judges jurisdiction over trials for petty offenses), and under 28 U.S.C. § 636(a)(1) and (3) (conferring ■ powers and duties of former United States commissioners upon federal magistrate judges, and authorizing magistrate judges to conduct trials under 18 U.S.C. § 3401). See also Fed. R. Crim. P. 58(b)(E) (requiring magistrate judge to notify defendant of right to trial, judgment, and sentencing before district judge unless charge is a petty offense).

. Hollingsworth was required to appeal first to the district court under 18 U.S.C. § 3402. See also Fed. R. Crim. P. 58(g)(2)(B) (authorizing defendant to appeal magistrate judge’s judgment of conviction and sentence to district court).

. See Rule 58(g)(2)(D) (providing that district court's review “is the same as in an appeal to the court of appeals from a judgment entered by a district judge”).

. This court has held that we have jurisdiction to hear appeals of this kind under 28 U.S.C. § 1291. See United States v. Hughes, 542 F.2d 246, 248 n. 3 (5th Cir.1976); see also United States v. Peck, 545 F.2d 962, 964 (5th Cir.1977) (hearing appeal of this kind without discussing basis for jurisdiction); United States v. Forcellati, 610 F.2d 25, 28 (1st Cir.1979) (explaining that circuit courts to consider issue have held that jurisdiction exists under § 1291).

. Hollingsworth concedes that his crime is a petty offense. Compare also 18 U.S.C. § 113(a)(5) (imposing a maximum six month sentence of imprisonment on any person who commits a "[sjimple assault” on a person sixteen years of age or older), with id. § 3559(a)(7) (defining Class B misdemeanor as crime for which maximum term of imprisonment is six months or less), and id. § 19 (defining petty offense to include Class B misdemeanors).

. Clause 17 gives Congress the power "[t]o exercise exclusive Legislation in all Cases whatsoever” over the District of Columbia and "to exercise like Authority over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings.”

. Because challenges to a court's subject matter jurisdiction can never be forfeited or waived, see Union Pac. R.R. Co. v. Bhd. Of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment, Cent. Region, 558 U.S. 67, 81, 130 S.Ct. 584, 175 L.Ed.2d 428 (2009), Hollingsworth may raise this challenge here even though he failed to raise it before the district court.

. Hollingsworth argues that "[i]t is not clear” that this principle from Palmore applies to Clause 17 federal enclaves like Belle Chasse. But in Paul v. United States, 371 U.S. 245, 83 S.Ct. 426, 9 L.Ed.2d 292 (1963), the Supreme Court stated that "[t]he power of Congress over federal enclaves that come within the scope of [Clause 17] is obviously the same as the power of Congress over the District of Columbia.” Id. at 263, 83 S.Ct. 426. Nothing in Palmore or later cases abrogate the Paul Court’s unambiguous statement. We hold that we are bound by Paul to apply Palmore in the present case. See United States v. Jenkins, 734 F.2d 1322, 1325-26 (9th Cir.1983) ("Because clause 17 does not distinguish between the District of Columbia and other federal enclaves, we find Palmore indistinguishable from the instant case and controlling.” (citing Paul, 371 U.S. at 263, 83 S.Ct. 426)).

. We refer to petty offenses only to show that Congress acted well within its constitutional power under Clause 17. We do not decide the distinct question whether all trials for petty offenses fall outside the scope of Art. III.

. Most of the statutes referring misdemeanor trials to the federal magistracy relate to the national parks. See Act of May 7, 1894, ch. 72, § 5, 28 Stat. 73, 74 (giving commissioner in Yellowstone National Park jurisdiction "to issue process in the name of the United States for the arrest of any person charged with the commission of any misdemeanor ..., and to try the persons so charged, and, if found guilty, to impose the punishment and adjudge the forfeiture prescribed”); Act of Aug. 22, 1914, Pub. L. No. 63-177, § 6, 38 Stat. 699, 700-01 (giving same jurisdiction to Glacier, National Park commissioner); Act of June 30, 1916, Pub. L. No. 64-124, § 6, 39 Stat. 243, 245 (giving same jurisdiction to Mount Rainier National Park commissioner); Act of Aug. 21, 1916, Pub. L. No. 64-223, § 6, 39 Stat. 521, 523 (giving same jurisdiction to Crater Lake National Park commissioner); Act of June 2, 1920, Pub. L. No. 66-235, §§ 7-8, 41 Stat. 731, 733-34 (giving same jurisdiction to Yosemite, Sequoia, and General Grant National Park commissioners); Act of Apr. 25, 1928, Pub. L. No. 70-317, § 6, 45 Stat. 458, 460 (giving same jurisdiction to Mesa Verde National Park commissioner); Act of Apr. 26, 1928, Pub. L. No. 70-320, § 6, 45 Stat. 463, 464-65 (giving same jurisdiction to Lassen Volcanic National Park commissioner); Act of Mar. 2, 1929, Pub. L. No. 70-1009, § 6, 45 Stat. 1536, 1538 (giving same jurisdiction to Rocky Mountain National Park commissioner); Act of Apr. 19, 1930, Pub. L. No. 71-157, § 6, 46 Stat. 227, 228 (giving same jurisdiction to Hawaii National Park commissioner); Act of Aug. 19, 1937, Pub. L. No. 75-322, § 5, 50 Stat. 700, 702 (giving same jurisdiction to Shenandoah National Park commissioner); Act of Mar. 6, 1942, Pub. L. No. 77-478, §§ 3, 5, 56 Stat. 133, 133-35 (giving Isle Royale National Park commissioner jurisdiction to try and sentence defendants for ”violation[s] of the [park’s] rules and regulations,” which were misdemeanors and could result in a sentence of up to six months of imprisonment); Act of Apr. 29, 1942, Pub. L. No. 77-533, §§ 3, 5, 56 Stat. 258, 259-60 (giving commissioner in Great Smoky Mountains National Park same jurisdiction as Isle Royale commissioner); Act of Apr. 23, 1946, Pub. L. No. 79-356, § 2, 60 Stat. 119, 119-20 (giving commissioner in Sequoia National Park jurisdiction to try and sentence defendants for “commission within [Kings Canyon National P]ark of a petty offense against the law”). But Congress also extended limited petty crimes jurisdiction to commissioners in certain federal enclaves beyond the national parks. See, e.g., Act of Apr. 20, 1904, Pub. L. No. 58-124, § 6, 33 Stat. 187, 188 (giving commissioner in Hot Springs Mountain Reservation jurisdiction to try and sentence defendants for any misdemeanor "or other like offense” when prescribed punishment "d[id] not exceed a fine of one hundred dollars”). At least one statute authorized general-duty commissioners, sitting as adjuncts to a federal district court, to conduct misdemeanor trials arising in a neighboring federal enclave. See Act of Sept. 1, 1916, Pub. L. No. 64-250, 39 Stat. 676, 693 (giving “nearest United States commissioner for the District of Maryland” jurisdiction to try and sentence defendants for moving-vehicle offenses committed on Con *561 duit Road, now called MacArthur Boulevard, when prescribed punishment did not exceed a fine of $40).

. The exception can also apply to crimes arising on American ships on the high seas or in foreign waters, at least when Congress has expressly given admiralty jurisdiction to a nearby legislative court. Compare id. at 74 n. 27, 102 S.Ct. 2858 (explaining that the Court had recognized Congress’s power to confer admiralty jurisdiction on "administrative tribunals”), with United States v. Flores, 289 U.S. 137, 149-150, 53 S.Ct. 580, 77 L.Ed. 1086 (1933) (holding that United States' admiralty jurisdiction extended not only to the high seas, but also to American vessels in foreign waters).

. See 28 U.S.C. § 631(a) (authorizing appointment of magistrate judges by district courts).

. See, e.g., D.C.Code § 11-1501(a) (providing that President appoints judges of the D.C. courts with advice and consent of the Senate); 10 U.S.C. § 942(b)(1) (same for judges of the Court of Appeals for the Armed Forces); 38 U.S.C. § 7253(6) (same for judges of the Court of Appeals for Veterans Claims); 48 U.S.C. § 1614(a) (same for judges of the District Court of the Virgin Islands).

. See, e.g., 8 C.F.R. § 1003.1(a)(1) (providing that Attorney General appoints members of Board of Immigration Appeals); 41 U.S.C. § 7105(a)(2), (b)(2)(B) (providing that federal agencies appoint members of the Armed Services and Civilian Boards of Contract Appeals).

. Certain Art. III judges may appoint legislative judges to the territorial courts when "necessary for the proper dispatch of the business of the ... court.” 48 U.S.C. § 1614(a) (authorizing certain Art. Ill judges to appoint members of District Court of the Virgin Islands); see also id. at § 1424b(a) (same for Guam); id. at § 1821(b)(2) (same for Northern Mariana Islands).

. Compare 28 U.S.C. § 634(a) (allowing compensation for magistrate judges "equal to 92 percent of the salary of a judge of the district court”), with, e.g., 48 U.S.C. § 1614(a) (setting Virgin Island judges’ salary "at the rate prescribed for judges of the ... district courts”).

. Compare 28 U.S.C. § 634(a) (allowing basic compensation for magistrate judges of about $180,000 as of 2014), with 5 U.S.C. § 5372a(b) (setting maximum, basic compensation for highest-paid member of Armed Services and Civilian Boards of Contract Appeals at about $160,000 as of 2015).

. Compare 28 U.S.C. § 631(e) (setting magistrate judges' term at eight years), and id. § 63 1(i) (allowing removal "only for incompetency, misconduct, neglect of duty, or physical or mental disability”), with, e.g., 10 U.S.C. § 942(b)(2), (c) (setting Court of Appeals for the Armed Forces terms at fifteen years, and allowing removal only for “neglect of duty,” "misconduct,” or "mental or physical disability”), and 48 U.S.C. § 1614(a) (setting Virgin Island District Court terms at ten years, and allowing removal "by the President for cause”).

.Nor do we understand why the dissent accuses us of "leapfrog logic” for relying on Paul. Caselaw aggregates over time, and courts are tasked daily with applying the holdings of cases decided across decades or more.