*U.S. v. Wasylyshyn*

# In the
# United States Court of Appeals
## For the Second Circuit

August Term, 2018

(Argued: May 20, 2019    Decided: November 3, 2020)

Docket No. 18-1344

UNITED STATES OF AMERICA,

*Appellee*,

–v.–

MARINA WASYLYSHYN,

*Defendant-Appellant.*

B e f o r e :

LIVINGSTON and CARNEY, *Circuit Judges*, and BERMAN, *District Judge.*[*]

Defendant-Appellant Marina Wasylyshyn appeals her conviction following a bench trial for creating a loud noise and nuisance at the Binghamton federal courthouse. Wasylyshyn entered the lobby of the Binghamton courthouse to retrieve tax forms, but was told by court security officers ("CSOs") Alan Canfield and David Lawrence that she was not allowed to go to the IRS office inside the building without an appointment. Wasylyshyn engaged in a loud argument with Canfield, aggressive on both sides.

---

[*] Judge Richard M. Berman, of the United States District Court for the Southern District of New York, sitting by designation.

Canfield arrested her. Federal Protective Service Inspector Joseph Chapman issued Wasylyshyn a violation notice charging her with creating a "loud or unusual noise or a nuisance" in the courthouse, in violation of 41 C.F.R. § 102-74.390(a) (the "Noise Regulation"). Wasylyshyn was convicted of the violation at a bench trial before a magistrate judge of the United States District Court for the Northern District of New York (Dancks, *M.J.*), and her conviction was upheld on appeal to a district judge (Suddaby, *C.J.*). *See* Fed. R. Crim. P. 58(g). On appeal before this Court, Wasylyshyn argues that her conviction is invalid because the Noise Regulation was not conspicuously posted in the courthouse and she was not otherwise on notice that her conduct was illegal. Wasylyshyn also contends that the evidence presented at trial was insufficient to establish that she acted with the requisite mental state to violate the Noise Regulation. Finally, Wasylyshyn assails the Noise Regulation as unconstitutionally vague as applied to her conduct in this case. We affirm. We conclude that Wasylyshyn forfeited her challenge to the conspicuous posting of the Noise Regulation by not raising the argument on appeal to the District Court. We further conclude that, under *United States v. Weintraub*, 273 F.3d 139, 147 (2d Cir. 2001), the Noise Regulation carries only a general intent requirement, and that the evidence supports that Wasylyshyn acted with this *mens rea*. Finally, we determine that the Noise Regulation is not unconstitutionally vague as applied to Wasylyshyn's conduct.

       AFFIRMED.

––––––––––––

MICHAEL F. PERRY, Assistant United States Attorney, *for* Antoinette T. Bacon, Acting United States Attorney for the Northern District of New York, Syracuse, NY, *for Appellee*.

DONNA ALDEA, Barket Epstein & Kearon LLP, Garden City, NY, *for Defendant-Appellant*.

––––––––––––

CARNEY, *Circuit Judge*:

Defendant-Appellant Marina Wasylyshyn appeals her conviction following a bench trial for creating a loud noise and nuisance at the Binghamton federal courthouse.

Wasylyshyn entered the lobby of the Binghamton courthouse to retrieve tax forms, but was told by court security officers ("CSOs") Alan Canfield and David Lawrence that she was not allowed to go to the IRS office inside the building without an appointment. Wasylyshyn then engaged in a loud argument with Canfield, aggressive on both sides. During the argument, Canfield arrested her. Federal Protective Service ("FPS") Inspector Joseph Chapman issued Wasylyshyn a violation notice charging Wasylyshyn with creating a "loud or unusual noise or a nuisance" in the courthouse, in violation of 41 C.F.R. § 102-74.390(a) (the "Noise Regulation"). Wasylyshyn was convicted of the violation at a bench trial before Magistrate Judge Thérèse Wiley Dancks of the United States District Court for the Northern District of New York,[1] and her conviction was upheld on an initial appeal to Chief District Judge Suddaby.[2]

---

[1] With or without the defendant's consent, a magistrate judge may try "petty offense[s] for which no sentence of imprisonment will be imposed." Fed. R. Crim. P. 58(a)(2), (b)(2)(E)(i), (b)(2)(F).

[2] Federal Rule of Criminal Procedure 58(g)(2)(B) provides, "A defendant may appeal a magistrate judge's judgment of conviction or sentence to a district judge within 14 days of its entry." *See also* 18 U.S.C. § 3402 ("In all cases of conviction by a United States magistrate judge an appeal of right shall lie from the judgment of the magistrate judge to a judge of the district court of the district in which the offense was committed."). The scope of such an appeal "is the same as in an appeal to the court of appeals from a judgment by a district judge." Fed. R. Crim. P. 58(g)(2)(D). The district court's determination on appeal may in turn be appealed as of right to the Circuit Court of Appeals as a "final decision" under 28 U.S.C. § 1291. *See, e.g., United States v. Hollingsworth*, 783 F.3d 556, 558 & n.2 (5th Cir. 2015) (affirming district court's judgment, which in turn affirmed sentence and conviction entered by magistrate judge, and noting that appellant "was required to appeal first to the district court under 18 U.S.C. § 3402"); *United States v. Falciglia*, No. 93 CR. 1016 (SEG), 1994 WL 698134, at *1 (S.D.N.Y. Dec. 13, 1994) (affirming magistrate judge's sentence on appeal), *aff'd*, 60 F.3d 810 (2d Cir. 1995). The Court of Appeals then reviews the magistrate judge's ruling applying the same standard of review as used by the district court. *See Hollingsworth*, 783 F.3d at 558.

Wasylyshyn now challenges her conviction on three grounds. She argues first that her conviction is invalid because (she asserts) the Noise Regulation was not conspicuously posted in the courthouse and she was not otherwise on notice that her conduct was illegal. Wasylyshyn contends next that the *mens rea* for the violation at issue is "knowledge that the action is wrongful," Appellant's Br. 30, and that the prosecution failed to make the necessary showing. Finally, Wasylyshyn urges that the regulation is unconstitutionally vague as applied to her conduct.

We reject these arguments. First, by failing to raise the conspicuous-posting argument in her initial appeal to the District Court, Wasylyshyn forfeited any challenge to her conviction on this ground. Next, under *United States v. Weintraub*, 273 F.3d 139, 147 (2d Cir. 2001), a conviction for violating the Noise Regulation requires proof only of a defendant's general intent. The proof presented at trial was sufficient to meet this standard as to Wasylyshyn. Finally, the Noise Regulation is not unconstitutionally vague as applied to Wasylyshyn's conduct.

We therefore **AFFIRM** the decision and order of the District Court.

## BACKGROUND

### I.    The Courthouse Incident

The following account is drawn from the record made before Magistrate Judge Dancks at the bench trial. In view of Wasylyshyn's conviction, we summarize the facts in the light most favorable to the government. *See Garbutt v. Conway*, 668 F.3d 79, 80 (2d Cir. 2012). The evidence presented consisted primarily of testimony given by Wasylyshyn, CSOs Canfield and Lawrence, and FPS Inspector Chapman; photographs

4

of the Binghamton courthouse lobby; and video footage of Wasylyshyn's encounter with the CSOs.

Near noon on February 14, 2017, Dr. Marina Wasylyshyn visited the Federal Building and U.S. Courthouse in Binghamton, New York, to collect tax forms from a self-service rack in a hallway off the building's lobby, as she had done in previous years. CSOs Canfield and Lawrence were behind the security desk in the courthouse lobby, facing the revolving door through which the public entered the building. After Wasylyshyn entered the building through the revolving door, Lawrence asked her "where she wanted to go." App'x 51.[3] A protest was assembling outside the building and the CSOs did not know whether Wasylyshyn was a protester. Wasylyshyn replied that she wanted to visit the office of the Internal Revenue Service. Lawrence informed Wasylyshyn that, under a new policy, "she [needed] an appointment to get into the I.R.S.," and "[t]hey no longer [accepted] walk-ins." *Id.* at 51-52. Wasylyshyn replied, "I don't need an appointment. I am just here to pick up some tax forms." *Id.* at 109. Lawrence turned to retrieve a flyer that provided a telephone number for scheduling an appointment with the IRS. As he retrieved the flyer, Lawrence asked Wasylyshyn which forms she needed and told her he "would get them for her." *Id.* at 90.

According to both Canfield's and Lawrence's testimony, at this point in the exchange Wasylyshyn had become "agitated." *Id.* at 52, 90. She "slammed" her purse on the counter, and then searched in her bag for a list of the forms she wanted. *Id.* at 52, 70, 90. Canfield stood up and joined Lawrence at the desk. Lawrence directed Wasylyshyn

---

[3] Unless otherwise noted, in text quoted from case law, this Opinion omits all alterations, citations, footnotes, and internal quotation marks.

to "calm down." *Id.* at 60, 105. Video surveillance footage shows Canfield extending his right arm and pointing a finger close to Wasylyshyn's face.[4] Lawrence testified that Wasylyshyn told him in a "very loud" voice that she was a doctor. *Id.* at 90. Lawrence responded that he did not care that she was a doctor and that "this is how it [is] done." *Id.* at 90-91. Wasylyshyn replied that she "pays [his] salary," that he was "a public servant," and that he "ha[s] to do what she tells [him] to do." *Id.* at 91. Next, Wasylyshyn handed Lawrence her list of forms. Lawrence took the paper and walked to the tax form rack in a hallway off the lobby, about 40 to 45 feet away. From there, Lawrence could hear Wasylyshyn "yelling about how [Lawrence and Canfield were] public servants" and how she "pays [their] salary," but he could not see Wasylyshyn or Canfield. *Id.* at 53, 91-92. The Magistrate Judge characterized Wasylyshyn as "shouting" during the encounter. *Id.* at 153-54.

Back at the security desk, Canfield advised Wasylyshyn that his "function" was not to help her; rather, he was "there for the security of the federal court only." *Id.* at 61. Wasylyshyn told Canfield that he was a federal employee, to which Canfield responded he was not, because he worked for a private company that contracted with the federal government. Canfield parried that "if she didn't like the rules in the building [she should] leave." *Id.* at 54, 61. Canfield acknowledged in his testimony that, during this argument, his "voice level" may have "exceeded hers." *Id.* at 79.

---

[4] The video footage of the encounter was reviewed by the Magistrate Judge, the District Judge, and was available on appeal to this Court. We noted no inconsistencies in interpretation or characterization of what the video recorded. The video recording did not include an audio component.

Canfield then walked out from behind the counter, approached Wasylyshyn, and pointed at her face. She backed away from him, toward the door. The surveillance footage shows (and no one disputes) that Canfield advanced several steps toward Wasylyshyn, pointing and appearing to speak aggressively, while Wasylyshyn continued to retreat. Eventually, Wasylyshyn stopped, stepped toward Canfield, and thrust her face toward Canfield's face. Magistrate Judge Dancks found based on the video footage that Wasylyshyn "stepp[ed] toward the CSO[,] . . . getting extremely close to him, if not touching him." *Id.* at 154. Canfield testified that Wasylyshyn made contact with him in "kind of a belly bump." *Id.* at 54-55. Canfield then placed Wasylyshyn under arrest, taking hold of her arm and directing her back to the security desk. Once at the security desk, Canfield took Wasylyshyn's purse from her hands, placed it on the desk, and struggled to pull Wasylyshyn's hands behind her back while he arrested her. At the same time, Canfield called for Lawrence to return.

When Lawrence returned from the tax form rack, he saw Canfield standing behind Wasylyshyn, with Canfield holding her arms behind her back. Canfield instructed Lawrence to retrieve Wasylyshyn's driver's license from her purse. Wasylyshyn "squirm[ed] around" and "yell[ed]" at Lawrence to tell Canfield to release her. *Id.* at 62, 93. Lawrence directed her to stand still and told her that she was under arrest. Wasylyshyn continued to move, and Lawrence stopped looking through her purse and assisted Canfield in handcuffing Wasylyshyn. After Wasylyshyn had been handcuffed, she asked why she was under arrest. Canfield answered that Wasylyshyn was under arrest "for being a bitch." *Id.* at 62-63, 93-94. Lawrence testified that he "clarified" this statement by explaining to Wasylyshyn that she was under arrest for "dis con or disorderly conduct." *Id.* at 94.

The CSOs detained Wasylyshyn for twenty to thirty minutes after handcuffing her; they also called for assistance. When FPS Inspector Chapman arrived at the scene in response to their call, he issued Wasylyshyn a violation notice for creating a "loud or unusual noise or a nuisance" in breach of the Noise Regulation, 41 C.F.R. § 102-74.390(a),[5] and released her. App'x 5, 33-34, 95. Wasylyshyn was then permitted to walk into the hallway past the CSO security desk to retrieve the tax forms she had come for.

Wasylyshyn later filed a complaint with the U.S. Marshal about the incident and Canfield received a formal reprimand for his verbal insult to Wasylyshyn.

## II.    Notice

During the bench trial, the government elicited testimony and introduced photographs to establish the size and placement of a poster entitled "GSA Rules and Regulations Governing Conduct on Federal Property" (the "Notice"). The Notice was posted roughly seven-and-a-half feet behind the security desk, on a bulletin board behind an x-ray machine and inside a glass frame. Although the Noise Regulation was printed on the Notice, Lawrence testified that an individual standing in front of the security desk could read only the bold-text title at the top of the document—the substance of the rules and regulations was illegible from that distance. Lawrence testified that he at no point saw Wasylyshyn reading the Notice and that he did not inform Wasylyshyn of the regulations posted on the Notice before he arrested her.

---

[5] The Noise Regulation provides, "All persons entering in or on Federal property are prohibited from loitering, exhibiting disorderly conduct or exhibiting other conduct on property that— (a) creates loud or unusual noise or a nuisance . . . ." 41 C.F.R. § 102-74.390.

The District Court found, and no one disputed, that the regulations had been posted in the courthouse in this fashion for many years, and that Wasylyshyn had visited the courthouse on several prior occasions.

### III.    The Trial and Appeal to the District Court

The case was tried before Magistrate Judge Dancks on August 23, 2017. After the government's case-in-chief, Wasylyshyn (represented by counsel) testified in her own defense. At the conclusion of the government's case, and again after she testified, Wasylyshyn moved for judgment of acquittal under Federal Rule of Criminal Procedure 29(a). In support, she argued, first, that the government had failed to prove that she had knowingly violated a federal regulation. Second, Wasylyshyn submitted that the Noise Regulation was unconstitutionally vague as applied in her case. Magistrate Judge Dancks denied Wasylyshyn's motion, found her guilty of the charged offense, and sentenced her to pay a $50 fine and a $30 processing fee.

Wasylyshyn appealed to the District Court, asserting that the evidence presented at trial was insufficient to establish that she had violated the Noise Regulation, that the Magistrate Judge applied the wrong *mens rea* requirement, and that the Noise Regulation was unconstitutionally vague as applied to her conduct. The District Court affirmed the conviction. *United States v. Wasylyshyn*, No. 17-cr-234-GTS (N.D.N.Y. Apr. 24, 2018).

Wasylyshyn now appeals to our Court.

**DISCUSSION**

In conducting a sufficiency review of a guilty verdict, we review the evidence presented at trial in the light most supportive of the verdict. *United States v. Griffith*, 284 F.3d 338, 348 (2d Cir. 2002). We will not disturb a conviction on grounds that the evidence at trial was legally insufficient "if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Wilkerson*, 361 F.3d 717, 724 (2d Cir. 2004). We review de novo questions of law, including the application of the law to undisputed facts and constitutional challenges to a law. *See Deegan v. City of Ithaca*, 444 F.3d 135, 141 (2d Cir. 2006).

## I. The Statutory Notice Requirement

Section 1315(c)(1) of title 40 in the U.S. Code ("section 1315" or the "statutory notice requirement") requires that certain regulations related to conduct on federal property, including the Noise Regulation, "be posted . . . in a conspicuous place." It reads:

> The Secretary, in consultation with the Administrator of General Services, may prescribe regulations necessary for the protection and administration of property owned or occupied by the Federal Government and persons on the property. The regulations may include reasonable penalties, within the limits prescribed in paragraph (2), for violations of the regulations. *The regulations shall be posted and remain posted in a conspicuous place on the property.*

40 U.S.C. § 1315(c)(1) (emphasis added).

Wasylyshyn now maintains that, because the Noise Regulation could not easily be read by visitors to the Binghamton courthouse, the government failed to comply with the statutory notice requirement. This failure makes her conviction invalid,

10

Wasylyshyn contends, arguing that before the CSOs arrested her she was not otherwise put on notice that her conduct was illegal.

We do not reach this argument, however, because Wasylyshyn did not raise it in the District Court. As a general rule, we will not consider arguments first raised on appeal to this court.[6] *Otal Investments Ltd. v. M/V CLARY*, 673 F.3d 108, 120 (2d Cir. 2012); *see Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 124 n.29 (2d Cir. 2005) ("The law in this Circuit is clear that where a party has shifted his position on appeal and advances arguments available but not pressed below, waiver will bar raising the issue on appeal."); *see also United States v. Pilati*, 627 F.3d 1360, 1364 (11th Cir. 2010) (holding that issues not raised on appeal to district court under 18 U.S.C. § 3402 are waived or abandoned by defendant). We are particularly reluctant to do so when, as here, the party appears to have previously disclaimed any intention of making the argument now pressed on appeal.

Wasylyshyn did not raise the government's failure to comply with the statutory notice requirement in her appeal to the District Court. In that appeal, Wasylyshyn pointed to the illegibility of the Noise Regulation only to advance her *mens rea* argument that she couldn't knowingly violate the Noise Regulation without being able to read it as posted. In fact, in her brief on appeal to Chief Judge Suddaby, Wasylyshyn

---

[6] We have not previously addressed this practice in the context of appeals to our court from district court rulings made under 18 U.S.C. § 3402. The requirement that arguments raised on appeal have been raised in the district court is motivated, however, by considerations that apply with equal, if not greater, force when we are reviewing a district court's exercise of appellate jurisdiction. *See, e.g., In re Anderson*, 884 F.3d 382, 388 (2d Cir.) (declining to consider argument not raised before bankruptcy court or on appeal to district court), *cert. denied sub nom. Credit One Bank, N.A. v. Anderson*, 139 S. Ct. 144 (2018). We therefore comfortably apply the identical rule here.

essentially disclaimed any intention to challenge the government's compliance with section 1315. She wrote:

> The error of the magistrate judge in this case was that she conflated the 40 U.S.C. 1315(c) requirement that the GSA regulations be "posted in a conspicuous place" with the totally separate requirement that a *mens rea* element is implied in the regulation (41 CFR 102-74.390) itself. In this case all the evidence is consistent that the GSA regulation was posted in a glass case on a pillar behind the CSO's station. . . . It is respectfully submitted that when this court reviews, *de novo*, the magistrate's conclusions of law which did not require the government to prove a culpable mental state, it should reverse the conviction because the government failed to prove that Dr. Wasylyshyn knowingly and willfully violated 41 CFR 102-74.390.

Brief for Defendant-Appellant at 22-23, *United States v. Wasylyshyn*, No. 17-cr-234-GTS (N.D.N.Y. Apr. 24, 2018). In affirming the conviction, Chief Judge Suddaby acknowledged Wasylyshyn's position that she was not challenging the conspicuousness of the Noise Regulation's posting: he commented, "There is no dispute here that the regulations were conspicuously posted at the entrance of the Binghamton Federal Building." App'x 173.

After disclaiming this argument in her appeal to Chief Judge Suddaby, Wasylyshyn may not now contend that her conviction is invalidated by any failure of the government to comply with the statutory notice requirement.[7] Because Wasylyshyn

---

[7] It is true that, on appeal to the District Court, Wasylyshyn cited *United States v. Marotz*, 75 F. Supp. 3d 1167 (N.D. Cal. 2014). *Marotz* is a case in which a district court held that the government did not prove a violation of the Noise Regulation because the regulation was not posted in a "conspicuous place" and the defendant was not otherwise placed on notice that his conduct was illegal. 75 F. Supp. 3d at 1171-72. Yet Wasylyshyn cited this case solely for the proposition—not supported by *Marotz*—that the court should read a *mens rea* requirement into the Noise Regulation. *See* Brief for Defendant-Appellant at 21-22, *United States v. Wasylyshyn*,

did not raise the government's failure to comply with the statutory notice requirement before the District Court, we treat the argument as waived and decline to consider it here.[8]

## II. *Mens Rea*

The Noise Regulation is silent as to the *mens rea* required to commit the offense. Wasylyshyn argues that she did not have the requisite *mens rea* for the violation because she lacked "knowledge that the action is wrongful." Appellant's Br. 30. We disagree.

Neither the Noise Regulation nor section 1315 states the *mens rea* for Wasylyshyn's offense. Nonetheless, the "legal principle that criminal statutes are presumed to contain a *mens rea* requirement" compels us to interpret the text of the Noise Regulation to include at least a minimal *mens rea* expectation. *United States v. Bronx Reptiles, Inc.*, 217 F.3d 82, 87 (2d Cir. 2000). In doing so, we apply "a canon of statutory interpretation to read criminal statutes that are silent or ambiguous as to the required standard of mens rea[] to demand knowledge of enough facts to distinguish conduct that is likely culpable from conduct that is entirely innocent." *United States v. Weintraub*, 273 F.3d 139, 147 (2d Cir. 2001). As *Weintraub* teaches, we presume that

---

No. 17-cr-234-GTS (N.D.N.Y. Apr. 24, 2018). Even if a mere citation were sufficient to preserve an argument for appeal, this citation would not be sufficient here: Wasylyshyn's citation of *Marotz* did not support the argument she now tenders.

[8] We use the term "waived" here rather than "forfeited" because the decision not to raise the argument earlier reflects a choice, rather than an unwitting fault. But our usage over time has varied. *Compare Katel Ltd. Liab. Co. v. AT & T Corp.*, 607 F.3d 60, 68 (2d Cir. 2010) ("An argument raised for the first time on appeal is typically forfeited."), *with Wal-Mart Stores*, 396 F.3d at 124 n.29 ("The law in this Circuit is clear that where a party has shifted his position on appeal and advances arguments available but not pressed below, waiver will bar raising the issue on appeal.").

13

implicit scienter requirements "require no more knowledge than necessary to put a defendant on notice that he is committing a non-innocent act." *Id.* In our review here, we therefore focus on "knowledge of wrongdoing," which, we have explained, "requires knowledge only of facts that in a reasonable person would create an expectation that his conduct was likely subject to strict regulation." *Id.* at 147-48.

We read into the Noise Regulation only a general intent requirement—i.e., "that the defendant possessed knowledge with respect to the *actus reus* of the crime." *Carter v. United States*, 530 U.S. 255, 268 (2000). Courthouses are formal spaces where solemn government business takes place; a reasonable person would understand that shouting at security officers in a courthouse is a "non-innocent act," likely subject to some form of regulation. *Weintraub*, 273 F.3d at 147-48. Hence, a general intent requirement suffices to distinguish "likely culpable" from "entirely innocent" conduct. *Id.* at 147. *Cf. United States v. Brice*, 926 F.2d 925, 929-30 (9th Cir. 1991) (holding that predecessor regulation to Noise Regulation outlined only general intent offense). To convict Wasylyshyn of violating the Noise Regulation, the government had to prove that she had knowledge she was creating a "loud or unusual noise or a nuisance" on federal property, 41 C.F.R. § 102-74.390(a), not that she knew of a specific regulation proscribing her conduct.

In this case, the Magistrate Judge credited the CSOs' testimony that Wasylyshyn was shouting at them, that her voice could be heard from 40 to 45 feet away, and that she kept shouting after being told to calm down. Accordingly, the District Court did not err in determining that the record contained evidence sufficient for a reasonable trier of fact to conclude beyond a reasonable doubt that Wasylyshyn knowingly created a loud noise or a nuisance.

14

### III. Vagueness

Finally, Wasylyshyn asserts that the Noise Regulation is unconstitutionally vague as applied to her conduct in this case. Because Wasylyshyn brings an as-applied challenge only, we consider whether the Noise Regulation is unconstitutionally vague in the context of Wasylyshyn's conduct. Yet "all vagueness challenges—whether facial or as-applied—require us to answer two separate questions: whether the statute gives adequate notice, and whether it creates a threat of arbitrary enforcement." *Farrell v. Burke*, 449 F.3d 470, 485 (2d Cir. 2006). Wasylyshyn contends that the Noise Regulation is unconstitutionally vague under both of these tests: first, Wasylyshyn submits that she "could not have reasonably understood that her conduct was prohibited by the regulation"; and second, she asserts that the language of the regulation is "sufficiently indefinite to allow the CSOs to engage in arbitrary and discriminatory law enforcement, motivated more by the content of [her] words than the volume of her voice." Appellant's Br. 35. Neither argument persuades.

We review de novo challenges to the constitutionality of a statute. *Deegan*, 444 F.3d at 141. We begin by addressing Wasylyshyn's first contention.

The "notice" prong of the vagueness inquiry "asks whether the statute, as written, provides notice sufficient to alert ordinary people as to what conduct is prohibited." *Arriaga v. Mukasey*, 521 F.3d 219, 224 (2d Cir. 2008). Wasylyshyn asserts that the use of the terms "loud" and "unusual" to modify the noise-making conduct barred by the Noise Regulation failed to provide a "sufficiently definite warning . . . that her conduct was prohibited." Appellant's Br. 35-36. In support, Wasylyshyn points to non-binding state and federal court decisions holding certain municipal anti-noise ordinances that bar "unusual" and "annoying" noises to be unconstitutionally vague.

15

*See id.* at 36 (citing *Fratiello v. Mancuso*, 653 F. Supp. 775 (D.R.I. 1987); *Thelen v. State*, 526 S.E.2d 60, 62 (Ga. 2000); *Nichols v. City of Gulfport*, 589 So.2d 1280, 1282 (Miss. 1991)).

We see little similarity between a municipal noise ordinance of general applicability and the Noise Regulation. While the ordinances in the cases cited by Wasylyshyn applied to conduct occurring at any location in an entire municipality, the Noise Regulation applies only to individuals who are on or who enter federal property managed by the General Services Administration. 41 C.F.R. § 102-74.365. Moreover, in Wasylyshyn's case, the regulation was applied in the highly secured and regulated space of a federal courthouse. In this particular setting, reasonable people can discern with relative ease whether a noise is "loud" or "unusual" and whether conduct constitutes a nuisance. We have little doubt that, inside a federal courthouse, a reasonable person would discern that "yelling" at a CSO constitutes creating a "loud noise."

Wasylyshyn also argues that the Noise Regulation's prohibition of conduct that creates a "nuisance" is subjective to the point that "no standard of conduct is specified at all." Appellant's Br. 37. In support, Wasylyshyn relies on the Supreme Court's decision in *Coates v. City of Cincinnati*, in which the Court struck down a municipal ordinance that "ma[de] it a criminal offense for 'three or more persons to assemble on any of the sidewalks and there conduct themselves in a manner annoying to persons passing by.'" 402 U.S. 611, 611 (1971) (quoting Code of Ordinances of the City of Cincinnati § 901—L6 (1956)). The Court held that the ordinance was unconstitutionally vague, explaining that because "[c]onduct that annoys some people does not annoy others," the ordinance failed to provide any meaningful "standard of conduct" to which a person could conform. *Id.* at 614.

16

Once again, the enforcement context is dispositive of the Noise Regulation's survival under Wasylyshyn's vagueness attack. As explained above, enforcement of the Noise Regulation is restricted to a narrow and special environment. The determination of whether a person creates a "loud or unusual noise or a nuisance" on federal property, 41 C.F.R. § 102-74.390(a), is considerably less subjective than the determination of whether conduct on city streets may be "annoying to persons passing by." *Coates*, 402 U.S. at 611. This distinction is particularly stark when analyzed, as we must do here, in the context of Wasylyshyn's own offense. Reasonable people can predict with a high degree of accuracy whether their conduct would create a "loud or unusual noise or a nuisance" in a federal court building. 41 C.F.R. § 102-74.390(a). It is much more difficult to foretell whether conduct on a city street would annoy any member of the public who happened to be passing by.

Wasylyshyn's second contention—that the purported vagueness of the Noise Regulation allows arbitrary and discriminatory enforcement—also fails. "Courts considering as-applied vagueness challenges may determine either (1) that a statute as a general matter provides sufficiently clear standards to eliminate the risk of arbitrary enforcement or (2) that, even in the absence of such standards, the conduct at issue falls within the core of the statute's prohibition, so that the enforcement before the court was not the result of the unfettered latitude that law enforcement officers and factfinders might have in other, hypothetical applications of the statute." *Farrell*, 449 F.3d at 494. As Magistrate Judge Dancks found following the trial, Wasylyshyn began "shouting" at CSOs Lawrence and Canfield shortly after entering the Binghamton federal courthouse, continued shouting after the CSOs directed her to calm down, and ultimately took a step toward Canfield, "getting extremely close to him" during their argument. App'x

17

153-54. Wasylyshyn's conduct cannot reasonably be described as anything other than conduct that creates a loud noise or nuisance in a courthouse lobby, however justified she may have felt in making a ruckus. Because we conclude that Wasylyshyn's conduct "falls within the core" of the Noise Regulation's prohibition, her challenge based on arbitrary enforcement falls short. *Farrell*, 449 F.3d at 494.

Wasylyshyn's contention that her "conduct was no different in kind or degree than that exhibited by the CSOs themselves" has no bearing on this conclusion, or on the outcome of her appeal in general. Appellant's Br. 37. Wasylyshyn insists that when Canfield began shouting at her and approached her in front of the security desk, it was reasonable for her to conclude that she would not violate the law by shouting or stepping toward him. *Id.* at 38. Even assuming this argument had firm support in the factual record of the encounter, it would have no bearing on the arbitrary enforcement inquiry discussed above. Because we find that, to sustain a conviction, Wasylyshyn's offense required a showing of no more than her general intent to engage in the subject conduct, any inferences about the legality of her actions that she may mistakenly have drawn from the CSOs' conduct are not relevant to the *mens rea* determination either.

## CONCLUSION

Wasylyshyn argues that she was unlawfully arrested and ultimately convicted of a federal misdemeanor violation without the benefit of statutorily required notice, without the requisite *mens rea*, and based on an unconstitutionally vague regulation. Although we are troubled by Wasylyshyn's aggressive treatment at the hands of the CSOs in response to her behavior, Wasylyshyn presents no valid basis to disturb her conviction. Wasylyshyn forfeited any challenge based on the statutory notice

18

requirement when she failed to advance the argument before the District Court. The record contains evidence sufficient to support that the applicable *mens rea* requirement—which we decide is of general intent—was met. The Noise Regulation is not unconstitutionally vague as applied to Wasylyshyn's conduct. We therefore **AFFIRM** the decision and order of the District Court.